**Charles G. RUSSELL, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S04–8907–CR–528.**

Supreme Court of Indiana.

July 13, 1989.

Frank Hanley II, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a judgment on a court finding of guilty of child molesting, a Class C felony. Appellant was sentenced to prison for a term of three years. The conviction was affirmed on appeal to the Fourth District of the Court of Appeals. The opinion of that court was not published. Appellant's petition to transfer to this Court is granted and the opinion of the Court of Appeals is vacated.

There are two appellate claims. In the first, the trial court's ruling that the child victim was competent to testify as a witness for the prosecution is questioned; and in the second, the sufficiency of the evidence to convict is questioned.

The general provision of the statutes in reference to the competency of witnesses is found in I.C. 34–1–14–5. The part

of that provision relevant to the first claim before us provides that children under ten years of age shall not be competent witnesses "unless it appears that they understand the nature and obligation of an oath."

Construing this provision, it was decided in *Martin v. State* (1969), 251 Ind. 587, 244 N.E.2d 100, that a statutory presumption of incompetence is created which is overcome if the child demonstrates an understanding of "the nature and obligation of an oath" and that there is no further test. That test is whether the child understands the difference between telling a lie and telling the truth, that is to say, the nature of an oath; and whether the child knew that she was under some compulsion to tell the truth, that is to say, the obligation of an oath. *Staton v. State* (1981), Ind., ·428 N.E.2d 1203. A voir dire examination by the trial court is required, and a resulting determination that the presumption of incompetency is overcome is itself subject to a presumption of validity on appeal and will not be reversed unless the ruling is a manifest abuse of discretion.

The claim on appeal here relates to the first part of the test and challenges the sufficiency of the basis for the court's determination that this child appreciated the difference between telling a lie and telling the truth. The child was called as a witness by the prosecution and the following .dialogue was recorded:

### QUESTIONS BY THE COURT:

Q How old are you?

A Six (6).

Q Six (6)? You can lower your hand. Do you go to Sunday School?

A First (1st) grade.

Q Your [sic] in the first (1st) grade at school. What school do you go to?

A School Fourteen (14).

Q School Fourteen (14)?

A Yeah.

Q And where do you live? Where do you—do you know where you live, the house address.

A On Walcott.

Q On Walcott Street? And how long have you lived there?

A About (unintelligible)

Q You don't know? Do you have any brothers and sisters?

A Two (2) brothers.

Q Two brothers? What are their names?

A Mikie and Robert.

Q Mikie and Robert?

A Yeah.

Q Do you know what is, the difference between a, to tell the truth and to tell a lie?

A Yeah.

Q Can you tell me what the difference is?

A (No audible response).

Q What? Can you tell me?

A A lie is the same (unintelligible), um, uh, . . .

Q You have to speak up a little bit louder.

A Lying is the same as stealing and sneaking.

Q Lying is the same as stealing? And what's—is that good or bad?

A Bad.

Q And if you tell the truth, is that good or bad?

A Good.

Q Good? And if you promise to tell me the truth, will you tell me the truth?

A Yeah.

Q What happens if you don't tell the truth?

A I'd go back there to jail.

Q You could go to—you know that something bad could happen to you.

A (No audible response)

THE COURT: Okay, do you have any other questions on qualifying the witness?

MS. McCONAHA: No, Your Honor.

THE COURT: Defense, do you have any?

MR. SOLOMON: Yes, Judge.

(And thereupon, Mr. Solomon approached the witness stand, but did or said nothing else.)

THE COURT: Well, just ask questions about her, whether she understands the nature of the oath, if you have something like that.

QUESTIONS BY MR. SOLOMON, Defense Counsel

Q   Dorothy, do you know the, uh, difference between telling the truth and telling a lie?

A   (No audible response)

Q   You do?

A   (No audible response)

Q   What is the difference?

MS. McCONAHA: Your Honor, these questions have been asked by the Court.

THE COURT: Yeah, these are—this is repetitious. We've gone over that.

MR. SOLOMON: Repetitious, Your Honor?

THE COURT: Yes.

MR. SOLOMON: Be that as it may, Your Honor, I would move to, uh, disqualify the witness.

THE COURT: That will be overruled. We'll find the witness is competent to testify. State want to proceed?

Appellant argues that the trial court never did get a definitive response to his question "Can you tell me what the difference (between to tell the truth and to tell a lie) is?" and in the absence of that or its equivalent, the first component of the test, namely that there is an understanding of the "nature" of an oath, is not satisfied.

The State argues that the judge would have observed the witness's physical motions and demeanor at the time the record indicates that the witness made "no audible response." We do not find this to reflect a tenable view of the record.

In *Johnson v. State* (1977), 265 Ind. 689, 359 N.E.2d 525, the prospective child witness testified that he knew what it meant to tell the truth and to tell a lie; and that if one lies, he must go back and start all over and tell it again. When then asked what must then be told, he responded that the truth must be told. Within these answers the Court found a sufficient basis for the inference that he knew the meaning of truth and falsehood. In *LeMaster v. State* (1986), Ind., 498 N.E.2d 1185, this Court considered the sufficiency of a court inquiry into the competency of a seven-year-old much like the one conducted in the case at bar. However, it was there pointed out that such inquiry was supplemented by questioning by the prosecutor which showed that the witness had an understanding in greater depth of the meaning of truth and that the child did discern the difference between truth and falsehood.

In this case, the trial court based its finding that the child understood the difference between truth and falsehood upon this:

Q   Do you know what is, the difference between a, to tell the truth and to tell a lie?

A   Yeah.

Q   Can you tell me what the difference is?

A   (No audible response).

Q   What?   Can you tell me?

A   A lie is the same (unintelligible), um, uh, . . .

Q   You have to speak up a little bit louder.

A   Lying is the same a[s] stealing and sneaking.

In this instance, the court correctly sought to find out whether the child knew that a true statement conforms to fact or reality and a false one does not. The court correctly perceived a child, in order to know the nature of an oath, must, in addition to appreciating the moral content of true and false statements, know what a true statement actually is. The court further correctly perceived that, for this additional requirement to be satisfied, more than making a flat statement like "I know what the truth is" would be required of a small child. For in the case of a small child, the term "truth" may have many connotations, including simply what parents or other persons in authority may say. However, the trial court's effort in this regard fell short. *Head v. State* (1988), Ind., 519 N.E.2d 151, notes one proper technique for determining that a prospective child witness under-

stands the meaning of truth. While that case was reversed because of error in the admission of evidence, it does note that the trial court qualified a child witness and, in so doing, asked her to give an example of someone telling a lie. Upon a proper answer the witness was correctly declared competent. This technique is short and to the point. Others may be equally appropriate.

The trial court was in error in refusing to permit defense counsel the opportunity to question the child regarding her understanding of truth or to do so himself. The qualification of the child on the basis of this colloquy was an abuse of discretion. However it is not every error or abuse of discretion which warrants reversal of a judgment of conviction. Only when the abuse of discretion affects the substantial right of a party or is inconsistent with substantial justice is reversal warranted. Ind.R.Tr.P. 61. Here, the trial court permitted defense counsel wide latitude when cross-examining the child. The examination of her was extensive and challenging. During it, she provided an ample basis for inferring that she knew that a true statement is one which comports with fact and reality. This occurred when she was questioned on the subject of bed wetting. She explained that when her mother inquired about whether she had wet the bed, she would respond truthfully and tell her when she and her bed had been wet. This subsequent proof at trial supplied the missing element of the preliminary determination that the witness was competent to testify. *Speck v. Kenoyer* (1905), 164 Ind. 431, 73 N.E. 896; *Anthony Wayne Oil Co. v. Barall* (1942), 111 Ind.App. 670, 42 N.E.2d 370. Under these circumstances, the error was harmless.

█ The gravamen of the offense of child molesting is the fondling or touching of a child under twelve years of age with intent to arouse or satisfy one's sexual desires. I.C. 35–42–4–3. Appellant next contends that the evidence serving to prove the fondling element and his intent to arouse or satisfy sexual desires was insufficient.

In resolving an appellate claim of evidentiary insufficiency, this Court does not weigh the evidence or resolve questions of credibility, but looks solely to the evidence and reasonable inferences therefrom which support the finding. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558. The victim testified that appellant came into her bedroom while she was sleeping and led her into the front room and put her in his bed. He closed his eyes. He then put her hand on his penis. When she took it away, he kept putting it back for what seemed like a hundred times. He had no clothes on while in bed with her, while she was in her night clothes. She demonstrated the incident with an anatomically correct doll. She repeated the core aspects of the incident several times during the trial. This was evidence of probative value which, if believed, would warrant a reasonable trier of fact in concluding beyond a reasonable doubt that appellant committed an act of touching within the meaning of this statute, and that when so doing he had the intent to arouse and satisfy his sexual desires. Evidence of this nature is sufficient on appeal. *Beckham v. State* (1988), Ind., 531 N.E.2d 475.

The conviction is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN and PIVARNIK, JJ., concur in result.