**Duane K. HARRINGTON,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A01–0106–CR–222.

Court of Appeals of Indiana.

Oct. 3, 2001.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Duane K. Harrington appeals his conviction after jury trial of child molesting, a Class C Felony. We affirm.

### Issues

Harrington raises three issues for our review:

1) Whether the trial court erred in allowing the State to strike a prospective juror who was African–American;

2) Whether the trial court abused its discretion in determining that the victim, a five year old child, was competent to testify at trial; and

3) Whether the trial court abused its discretion in not excluding from evidence statements and a hand-written letter by Harrington.

### Facts and Procedural History

Harrington lived for a time with Tracy Shepherd and her son, T.S.; in addition, the pair had a son together during their cohabitation. After Harrington and Shepherd separated, Harrington continued to have alternate weekend visitation with the two boys. Then T.S. reported to his mother that Harrington fondled him during a visitation. Shepherd notified the police of T.S.'s allegations. The child was interviewed, and Harrington met with police investigators regarding the charges. On August 31, 1999, Harrington submitted to a polygraph examination, the results of which were inconclusive. Harrington then acknowledged to police officers that he fondled T.S., and he wrote a letter of apology to the child.

Harrington was arrested and charged with child molesting on September 17, 1999. Prior to the trial, Harrington filed a motion to suppress his statement to police as well as his hand-written apology letter to T.S. The trial court denied the motion to suppress. After a jury trial, Harrington was convicted as charged and sentenced to four years to be executed in the Department of Correction. Harrington then brought this appeal.

### Discussion and Decision

#### I. Exclusion of Juror

##### A. Standard of Review

The equal protection clause contained in the Fourteenth Amendment to the United States Constitution prohibits the prosecution's use of peremptory challenges in a racially discriminatory manner. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 83 (1986). This court will not set aside a trial court's finding regarding whether a prosecutor had discriminatory intent in striking a juror unless the finding is clearly erroneous. *McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997). The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact which is accorded great deference on appeal, because the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge. *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997).

##### B. Prosecutor's Intent

Harrington argues that he was denied a fair trial because the trial court allowed the State to use a peremptory challenge to strike potential juror Polela, who is African American as is Harrington. To raise a prima facie equal protection clause claim, a defendant must establish that: (1) the juror is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion

was based on race. *Wright,* 690 N.E.2d at 1104. Once a defendant makes the requisite prima facie showing, the burden shifts to the prosecutor to provide a race-neutral explanation for the peremptory strike. *Id.* If the explanation, on its face, is based on something other than race, the explanation will be deemed race neutral. *McCants,* 686 N.E.2d at 1284. The trial court must then decide whether the defendant has shown that the state committed purposeful race discrimination in the process of jury selection. *Id.* The prosecution's explanation is not required to rise to the level of a challenge for cause. *Barnett v. State,* 637 N.E.2d 826, 830 (Ind.Ct.App.1994).

▮ During jury selection, Harrington objected to Polela's being stricken. The trial court then asked the State to provide a race-neutral explanation for the strike. The State responded that Polela expressed concern because he is a teacher, and his absence would disrupt his students' learning. It also struck Polela because he has previously taught special needs students, and as the State anticipated the defense would raise the issue of Harrington's comprehension level or learning ability during trial, the prosecutor was concerned Polela would be unduly sympathetic to a learning-disabled defendant. The State also noted it had not struck two other African American jurors who remained on the panel. Finally, the prosecutor noted Polela is a science teacher, and "they like things to add up, and I don't like those kinds of jurors and routinely strike science teachers." Transcript at 67. After the State gave these reasons for the strike, the trial court determined these reasons to be race-neutral; thus, the strike was permitted, and Polela was excused from the panel.

Harrington argues the trial court committed clear error because the State's race-neutral reasons were not plausible. He notes the State did not ever directly question Polela to further probe his statements. He notes several potential jurors expressed concerns about being away from their homes and/or jobs for two days, and the State did not pursue this issue in any questioning of Polela. He also notes that while five panel members indicated familiarity with persons who had learning disabilities, only three of the five were struck by either party; thus, the State did not make any attempt to strike a juror who gave a response similar to Polela's. Harrington additionally argued that other Indiana cases on race-based peremptory challenges all dealt with more substantial race-neutral explanations besides simply "not liking science teachers," for example. Instead, Harrington argues, the reasons given by the State were actually to conceal its racially based strike.

We do not find clear error in the trial court's decision to allow the strike. Even after Polela was struck, two African American jurors remained on the panel. While we question whether the State's concern over Polela's potential sympathy with learning-disabled individuals alone would justify a strike in the face of a *Batson* challenge, the State's reasons, when considered cumulatively and in conjunction with the actual circumstances surrounding this strike, simply do not add up to purposeful race discrimination. Affording the trial court's decision the required degree of deference, we find the trial court did not err in allowing the strike.

## II. Ruling on Child's Competency to Testify

### A. Standard of Review

▮ "Every person is competent to be a witness except as otherwise provided in [the Indiana Evidence] rules or by act of the Indiana General Assembly." Ind. Evidence Rule 601. Rule 601's failure to presumptively exclude children does not pro-

hibit special inquiry into their competency prior to testifying when the issue is raised by a defendant. *Burrell v. State,* 701 N.E.2d 582, 585 (Ind.Ct.App.1998). A determination as to a witness's competency lies within the sound discretion of the trial court and is reviewable only for a manifest abuse of that discretion. It is within the sound discretion of the trial court to determine whether a child is competent to testify based upon the judge's observation of the child's demeanor and responses to questions posed to her by counsel and the court, and a trial court's determination that a child is competent will only be reversed for an abuse of discretion. *Newsome v. State,* 686 N.E.2d 868, 873 (Ind.Ct. App.1997).

### B. Competency

Harrington argues the trial court did not hear enough persuasive evidence to determine five-year-old T.S. competent to testify. He notes that during the competency hearing, T.S. was not able to inform the trial court where he lived. He also notes that T.S. told the trial court he attended the second grade; this is not accurate, as T.S. was only five at the time of trial. T.S. also testified during the trial that Harrington touched his private parts twice; however, the child had never mentioned more than one incident prior to trial. T.S. testified during trial that he had visitation with Harrington three times, when actually T.S. and his brother saw Harrington every other weekend for approximately six months. Finally, during trial, T.S. was not able to testify as to what he was wearing during the incident, in what room in Harrington's house it happened, or whether anyone else was present at the time. Thus, Harrington argues, T.S. was not a competent witness.

■ The enactment of Indiana Evidence Rule 601 did not affect previous Indiana decisions regarding the competence of children to testify, and a trial court is still required to determine whether the child (1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *Newsome,* 686 N.E.2d at 872. In the case of a small child, the term "truth" may have many connotations, including simply what parents or other persons in authority may say. One proper technique for determining that a prospective child witness understands the meaning of truth is to ask the child to give an example of someone telling a lie. *Russell v. State,* 540 N.E.2d 1222, 1224–25 (Ind. 1989).

■ The record shows that the prosecutor reminded T.S. he had promised to tell the truth, and that meant he had to tell the truth. T.S. responded affirmatively to these statements. The prosecutor questioned T.S. about his general understanding of truth and lying and about the consequences of lying, and T.S. explained how his mother punished him at home if he lied. Finally, she asked T.S. to give examples of true statements and lies, which he did. After this series of questions from the prosecutor, the trial court found T.S. competent to testify.

We find no abuse of discretion in the trial court's determination that T.S. was competent, as the court heard sufficient evidence to satisfy the test described in *Newsome,* above. The fact that the child's testimony at trial could be interpreted as ambiguous goes to his credibility, not his competency. The jury was free to disregard T.S.'s testimony if they felt he was not a credible witness; however, there was no error in the determination of the witness' competency.

## III. Admissibility of Evidence

### A. Standard of Review

 If a defendant challenges the admissibility of his self-incriminating statement, the State must prove the voluntariness of the statement beyond a reasonable doubt. When a defendant makes such a challenge, the decision to admit the statement is left to the sound discretion of the trial court. A trial court's finding of voluntariness will be upheld if the record discloses substantial evidence of probative value that supports the trial court's decision. This Court will not reweigh the evidence, and conflicting evidence is viewed most favorably to the trial court's ruling. *Turner v. State*, 738 N.E.2d 660, 662 (Ind. 2000).

### B. Admissibility

Harrington argues the trial court erred in determining his statement to police was voluntary. He argues "he was deceived by his interrogators when he was informed he had 'failed' a polygraph exam, that the officers pressed him to change his responses and admit guilt, and he confessed as a result of police deception and coercion." Brief of Appellant at 26.[1] Harrington also argues his limited mental capabilities should affect the way this court considers the voluntariness of his confession.

 A waiver of one's Miranda rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Ringo v. State*, 736 N.E.2d 1209, 1212 (Ind.2000). The admissibility of a confession is controlled by determining from the totality of the circumstances whether the confession was made voluntarily and was not induced by

violence, threats, or other improper influences that overcame the defendant's free will; the same test determines whether Miranda rights were voluntarily waived. *Id.* A signed waiver form is one item of evidence showing the accused was aware of and understood his rights. *Id.* Coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Id.* at 1213. A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *Id.*

 Harrington drove himself to the police station, both for an initial questioning and for the polygraph examination. Harrington signed a waiver of his rights prior to the polygraph examination. Harrington was not in custody at the time he took the polygraph examination, and the examining officer testified he informed Harrington that the polygraph examination was voluntary. Both police officers who questioned Harrington testified at the suppression hearing that they did not coerce Harrington into testifying. Both police officers testified they perceived Harrington to be of average intelligence and to understand the waiver he signed. These facts are substantial evidence that Harrington's statement was voluntary.

Harrington's argument primarily focuses on what happened immediately after the polygraph examination. The results of the polygraph were inconclusive; in other words, the results did not conclusively indicate truth-telling or lying. The officer who administered the exam said the test

---

1. Harrington does not make a separate argument with respect to his letter of apology to

T.S.; therefore, we consider it as part of Harrington's confession to police.

results showed Harrington had a significant reaction to some of the questions, a reaction that can indicate lying. After the exam, Harrington was told by an officer that some of the results indicated a problem, and they asked him to tell them the truth.[2] Initially, Harrington denied any wrong-doing, but he soon admitted to fondling T.S., and he eventually wrote an apology letter to T.S. The officer's statements to Harrington informing him of a problem with the polygraph result and the officer's urging Harrington to tell the truth do not constitute deceptive interrogation tactics. We find no abuse of discretion in the trial court's determination that Harrington's confession and letter to T.S. were voluntary and should therefore be admitted into evidence.

### Conclusion

For the foregoing reasons, we hold that the trial court did not err in allowing the juror struck, in allowing T.S. to testify, or in admitting Harrington's confession and letter of apology to T.S.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.

2. It is not clear from the record whether the officer who administered the test told Harrington that he "failed" the test or whether he told Harrington that there were "problems" with his test result; it is this distinction on which Harrington primarily focuses in his brief. We presume the trial court was in the best position to determine what the officer said to Harrington after hearing testimony from the officer and from Harrington; therefore, we will not reweigh this evidence on appeal. Additionally, we presume the trial court, after hearing Harrington's testimony, was in the best position to determine Harrington's intelligence level and ability to understand the officer's statements to him; we will also not reweigh this evidence on appeal.