Ronald C. HOWARD, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–0402–CR–101.

Court of Appeals of Indiana.

Oct. 28, 2004.

---

Steven P. Stoesz, Stoesz & Stoesz, West-field, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Ronald C. Howard Jr. (Howard), appeals his conviction

for Count I, child molesting, a Class A felony, Ind.Code § 35–42–4–3(a)(1).

We affirm.

## ISSUES

Howard raises seven issues on appeal, which we restate as follows:

(1) Whether a fundamental error occurred when the trial court allowed a minor victim of child molestation to testify prior to determining her competency;

(2) Whether the State violated Howard's right of confrontation by presenting the deposition testimony of the victim to the jury after the trial court declared the victim to be unavailable to continue her testimony;

(3) Whether the trial court abused its discretion in admitting hearsay evidence;

(4) Whether the trial court abused its discretion by denying Howard's request to introduce evidence which would violate his own motion in limine;

(5) Whether the trial court erred in denying Howard's motion for mistrial;

(6) Whether the trial court properly instructed the jury regarding deposition testimony; and

(7) Whether the jury's verdicts were impermissibly inconsistent.

## FACTS AND PROCEDURAL HISTORY

Howard and Tina Brooks (Brooks) were married on October 1, 1994. Brooks had a daughter, C.C., born on October 14, 1991, from a previous relationship. Sometime between July 1, 1996 and October 31, 1997, Howard engaged in sexual acts with his six-year-old stepdaughter. He made her watch sexual videos and "would make [her] put his thing in [her] mouth." (Transcript p. 619). C.C. clarified that she was refer-ring to Howard's penis. Howard also "would lick [her] private parts," her vagina. (Tr. p. 619). C.C. remembers that on one distinct occasion "[y]ellow stuff" came out of Howard's penis when he placed it in her mouth. (Tr. p. 632). After refusing to swallow, Howard allowed C.C. to wash out her mouth.

When C.C. told Brooks about these incidents, Brooks temporarily separated from Howard. However, two to three weeks later, they moved back in with Howard. Brooks' and Howard's divorce was finalized sometime in 1998. According to Brooks, C.C. never informed her of these incidents while they were living with Howard. She was first notified about the molestations when C.C. told Brooks' subsequent boyfriend in late 1997. Around that time, Brooks filed an initial complaint with the Hamilton County Sheriff's Department. In the summer of 2002, C.C. received counseling due to behavioral problems. During the course of counseling, C.C. made certain disclosures to her doctor, which the doctor felt legally compelled to report to the authorities.

On June 24, 2002, the State filed an information, charging Howard with Count I–IV, child molesting, a Class A felony, I.C. § 35–42–4–3. On November 5 through November 13, 2003, a jury trial was held. At the close of the evidence, the jury found Howard guilty of Count I, child molesting, and acquitted him on the remaining Counts. On December 15, 2003, during the sentencing hearing, the trial court sentenced Howard to 35 years at the Indiana Department of Correction.

Howard now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Child's Competency to Testify

Howard first contends that the trial court failed to exercise any discretion

at all when it allowed C.C. to take the witness stand and commence testifying without determining first whether she was a competent witness. However, our review of the record shows that Howard never objected to C.C.'s continued testimony. Generally, a contemporaneous objection is required to preserve an issue for appeal. *Spears v. State*, 811 N.E.2d 485, 488 (Ind.Ct.App.2004) (quoting *Anderson v. State*, 653 N.E.2d 1048, 1051 (Ind.Ct. App.1995)). Seeking to avoid procedural default, Howard urges that his claim is not foreclosed because the trial court's failure to assess C.C.'s competency constituted fundamental error. Nevertheless, we acknowledge that the fundamental error doctrine is extremely narrow. To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id.* at 489 (quoting *Willey v. State*, 712 N.E.2d 434, 444–45 (Ind.1999)). To be fundamental error, the error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Id.* (quoting *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987)).

We note that "[e]very person is competent to be a witness except as otherwise provided in [the Indiana Evidence] rules, or by act of the Indiana General Assembly." Ind. Evidence Rule 601. A determination of a witness' competency lies within the sound discretion of the trial court and is reviewable only for a manifest abuse of that discretion. *Aldridge v. State*, 779 N.E.2d 607, 609 (Ind.Ct.App. 2002), *trans. denied.* Thus, it is within the discretion of the trial court to determine whether a child is competent to testify based upon the judge's observation of the child's demeanor, responses to questions posed to her by counsel and the court.

*Harrington v. State*, 755 N.E.2d 1176, 1180 (Ind.Ct.App.2001). Although Indiana Evidence Rule 601 abandoned the previously arbitrary lines drawn regarding age, in favor of a rule which assumes competency until otherwise demonstrated by the opponent of the testimony, the trial court is still required to determine whether a child witness (1) understands the difference between telling a lie and telling the truth, (2) knows whether she is under a compulsion to tell the truth, and (3) knows what a true statement actually is. *See Aldridge*, 779 N.E.2d at 609; *Harrington*, 755 N.E.2d at 1180.

In the instant case, C.C. was called as the State's witness. Prior to answering general background questions, the trial court asked C.C. to raise her right hand and to take the oath. The record shows that C.C. was "duly sworn to tell the truth, the whole truth, and nothing but the truth." (Tr. p. 469). Following the oath, the State introduced C.C. to all the people in the courtroom and explained their respective duties. The record further reflects that the State commenced questioning C.C. with general questions about her education. However, the record is devoid of any testimonial evidence establishing that C.C. understood the difference between the truth and a lie and the importance of telling the truth at trial. *See Harrington*, 755 N.E.2d at 1180. Consequently, an error was made.

Nevertheless, our inquiry does not end here. Since Howard failed to raise a timely objection to C.C.'s testimony, he carries the heightened burden of proof, establishing that the trial court's failure to assess C.C.'s competency resulted in substantial harm. *See Spears*, 811 N.E.2d at 489. Here, the record reflects that at the day of trial C.C. was twelve years of age. At the close of the general background questions, the State attempted to direct

C.C. to the molestation evidence. Asking "tell me what rape means," C.C. responded "[s]omething that people do to little kids." (Tr. p. 481). Following this response, the record shows that C.C. started to cry, refused to answer any more questions, and requested a break. The record further establishes that after the break, the trial court conducted a hearing outside the presence of the jury, for the purpose of determining whether C.C. was able to continue her testimony. Concluding that C.C was unavailable for further testimony, the trial court permitted the State to present C.C.'s deposition, which was previously taken by Howard's counsel, to the jury. Our review of her deposition shows that after taking the oath, the following exchange occurred between C.C. and Howard's counsel:

[COUNSEL]: What did you just do there, [C.C]?

[C.C.]: I swore to tell, I swore to tell the truth.

[COUNSEL]: Okay. And you know the difference between a truth and a lie, right?

[C.C]: Yes.

[COUNSEL]: Tell me what each one is. What's the truth and what's a lie?

[C.C]: A lie is if you tell something and it's not true, then you are lying.

[COUNSEL]: Okay.

[C.C]: And the truth is if you tell me something and it's true then you're not lying.

[COUNSEL]: Okay. [ ], I'm going to ask you questions today and you are going to answer those questions and if you answer 'em, I will assume that you're telling me the truth, Okay? Cause that's all we want to know here is the truth.

[C.C.]: Okay.

(Tr. pp. 600–01).

In *Russell v. State*, 540 N.E.2d 1222 (Ind.1989), our supreme court held that the trial court's decision to allow a child to testify without adequately determining whether the child knew the difference between the truth and a lie was harmless where the child demonstrated during subsequent questioning that she in fact understood the difference. *Id.* at 1225. As supported by the record, C.C. adequately explained the difference between the truth and a lie, and its consequences when questioned by Howard's counsel during her deposition. Because of C.C.'s unavailability, the deposition testimony was presented to the jury and the trial court, and consequently read into the record. Accordingly, although the trial court did not adequately establish C.C.'s competency prior to allowing her to testify, the subsequent inclusion of her deposition testimony made it clear that she understood the difference between the truth and a lie and the importance of telling the truth at trial. *See id., Harrington,* 755 N.E.2d at 1180. Therefore, even though an error was made, this error was harmless. *See Russell,* 540 N.E.2d at 1225. Accordingly, we conclude that Howard failed to prove that this error amounted to a violation of his fundamental due process rights. *See Spears,* 811 N.E.2d at 489. Thus, we find that no fundamental error occurred.

## II. *C.C.'s Unavailability at Trial*

■ Next, Howard asserts that the trial court abused its discretion by admitting C.C.'s deposition into evidence. Specifically, he claims that he was deprived of his right of confrontation, under both the Sixth Amendment to the U.S. Constitution and Article I, Section 13(A) of the Indiana Constitution [1] by not being able to cross-

---

1. Although Howard raises a violation of his confrontation rights under Article I, Section

examine C.C. after the trial court deemed her unavailable and admitted her pretrial deposition.

### A. *Standard of Review*

 Our standard of review in this area is well-settled. The admission of evidence is within the sound discretion of the trial court, and its decision whether to admit evidence will not be reversed absent a showing of manifest abuse resulting in the denial of a fair trial. *Guy v. State*, 755 N.E.2d 248, 252 (Ind.Ct.App.2001). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Id.*

 Generally, an absent witness' deposition testimony offered in court to prove the truth of the matter asserted constitutes classic hearsay. *Garner v. State*, 777 N.E.2d 721, 724 (Ind.2002). Possible exceptions to this hearsay rule lie under both Indiana Trial Rule 32 and Indiana Evidence Rule 804, which allow the use of prior recorded testimony in lieu of live testimony in certain circumstances. *Id.* The decision to invoke the rule allowing admission of a deposition is within the sound discretion of the trial court. *Id.* Nevertheless, the constitutional right of confrontation restricts the range of admissible hearsay by requiring (1) that the State either produce the declarant or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant and (2) that the statements bear sufficient indicia of reliability. *Id.* (quoting *Jackson v. State*, 735 N.E.2d 1146, 1150 (Ind.2000)). Depositions that comport with the principal purposes of

cross-examination provide sufficient indicia of reliability. *Id.*

### B. *Unavailability*

 With respect to the trial court's finding that C.C. was unavailable to continue her testimony, Howard asserts that the trial court should have forced C.C. to testify instead of permitting her pretrial deposition to be read into evidence at trial. In *Jackson*, our supreme court held that a witness is unavailable for purposes of the Confrontation Clause requirement only if the State made a good faith effort to obtain the witness's presence at trial. *Jackson*, 735 N.E.2d at 1151. Reasonableness is the test that limits the extent of alternatives the State must exhaust. *Id.*

In support of their respective positions, both parties rely on our decision in *Guy v. State*, 755 N.E.2d 248 (Ind.Ct.App.2001). In *Guy*, we found that the trial court did not abuse its discretion by admitting a victim's pretrial deposition where the child was emotionally unavailable to testify at trial. *Id.* at 256. On the day of trial, and prior to presenting its case-in-chief, the State informed the trial court that several days earlier, the child had become emotionally upset and unresponsive to questioning during pre-trial preparation. *Id.* at 253. Although the victim was present on the day of trial, the State stated that the child was crying, screaming, and unwilling to be separated from her mother. *Id.* Initially refusing the State's request to declare the child to be unavailable, the trial court in *Guy* advised the State to call the child as its first witness in order to evaluate her stability. *Id.* Outside the presence of the jury, the State attempted to elicit testimony from the child and the

---

13(A) of the Indiana Constitution, he nevertheless fails to provide us with an analysis. Instead, Howard presents us solely with contentions under the Sixth Amendment to the

U.S. Constitution. Therefore, we find his allegation under the Indiana Constitution waived pursuant to Ind. Appellate Rule 46(A)(8).

trial court even ordered the child to testify. *Id.* As she remained hysterical and emotionally upset, the trial court found the child to be unavailable and allowed her deposition testimony, given under oath and conducted by Guy's counsel, to be admitted. *Id.* at 253–54. On appeal, we affirmed the trial court's decision. *Id.* at 254.

In the case at hand, C.C. commenced testifying at trial. However, when the State directed the focus of its questions to the molestations, C.C. suddenly started crying and asked to take a break. The record reflects that during the break, C.C. vomited and became very distraught, maintaining that she could not continue her testimony. Recognizing C.C.'s emotional state, the State informed the trial court of her condition and moved to admit C.C.'s pretrial deposition testimony because she had become unavailable. Prior to responding to the State's motion, the trial court decided to talk to C.C. personally, outside the presence of the jury. The record shows that after questioning C.C., the trial court determined that there was not "anything that the court could do or provide [C.C.] that would allow her to continue to testify." (Tr. p. 496). Specifically referencing our decision in *Guy*, the trial court then declared C.C. to be unavailable and permitted the State to introduce C.C.'s pretrial testimony into evidence.

Howard now attempts to distinguish *Guy* by arguing that the trial court should have forced C.C. to testify, as did the trial court in *Guy*. Howard further maintains that "[w]hen balancing the sensibilities of [Howard], charged with an A felony and entitled to all the protections of due process, and a child accuser who is too emotional to testify, the rights of [Howard] should outweigh the sensitivities of [C.C.]." (Appellant's Br. p. 10). We find Howard's attempt to be unavailing. The record re-

flects that at the day of trial, C.C. was twelve years old, and was asked to recount molestation charges in front of strangers, using explicit sexual language she is clearly not comfortable with. Despite the State's and the trial court's efforts to calm C.C. after the break, she continued to be upset and verbally unresponsive. In fact, her testimony clearly supports that she refused to continue to answer any questions. Thus, as in *Guy*, the trial court properly declared C.C. to be unavailable. Being mindful of the trial court's discretion in this area, we find no abuse. *See id.*

■ Furthermore, Howard argues that the State did not make made a good faith effort to obtain C.C.'s presence at trial, and instead asserts that the State had a prior warning that C.C might be an unwilling witness at trial. Although the record indicates that during C.C.'s conversation with Dr. Richard Lawlor, the State's expert in child psychiatry, she refused to answer specific questions about the molestations, Dr. Lawlor nevertheless informed the State that it was his belief C.C. would be able to testify at trial. Accordingly, we find that the trial court did not abuse its discretion by finding that the State acted in good faith and made a reasonable effort in making C.C available at trial. *See Jackson,* 735 N.E.2d at 1151.

### C. *Howard's Opportunity for Cross–Examination*

■ Next, we need to decide whether C.C.'s pretrial statement comported with the principal purposes of cross-examination by providing sufficient indicia of reliability in order to be admitted under the unavailable witness exception of the hearsay rule. *See Jackson,* 735 N.E.2d at 1150.

Previously, in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), our Supreme Court held an unavailable

witness's statement against a criminal defendant to be admissible under the Confrontation Clause of the Sixth Amendment of the United States Constitution if the statement bore "adequate indicia of reliability." *Id.* at 66, 100 S.Ct. 2531. However, in its recent decision of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court squarely overruled the reliability test stipulated by *Roberts.* Returning to the roots and history of the Sixth Amendment, our Supreme Court criticized *Roberts*, by finding:

> "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to the amorphous notions of 'reliability.' ... To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that the evidence be reliable, but that reliability be assessed in a particular manner: by testing it in the crucible of cross-examination."

*Id.* at 1370. In light of this analysis, the Supreme Court returned to the original meaning of the Confrontation Clause, as intended by the Framers, and held that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 1374.

Relying on *Crawford* and *Guy*, Howard now contends that C.C.'s pretrial deposition does not meet this requirement of a "prior opportunity for cross-examination." We disagree. The record establishes that C.C.'s pretrial testimony was given under oath at a deposition conducted by Howard's defense counsel. The deposition concerned the same parties and issues that were present at trial. Howard's counsel was fully able to and did effectively question C.C. during the deposition. In addition, Howard's counsel's motive to question C.C. during this deposition was the same as during trial.

 Furthermore, we find Howard's assertion that his confrontation rights were violated because he was not personally present during the deposition to be without merit. As our supreme court stated in *State v. Owings*, 622 N.E.2d 948 (Ind.1993) where defense counsel takes the deposition and actively participates in it, defendant is deemed to have waived his right of confrontation at trial. *Id.* at 952. The record reflects that at trial, Howard's counsel informed the trial court that Howard's absence of the deposition was a strategic decision. Counsel explained that he hoped to gather more and better testimony from C.C. if Howard would not confront her at that time. Even if, according to Howard, this admission does not constitute a waiver of his right to confrontation, we conclude, as we did in *Guy,* that his counsel effectively protected Howard's interests by carefully and effectively questioning C.C. about the molestations. *Guy,* 755 N.E.2d at 254.

Based on the evidence before us, we find that the trial court did not abuse its discretion by declaring C.C. to be an unavailable witness after she became unexpectedly emotional and hysterical when the State directed its questions to the specific allegations of molestations. *See Guy,* 755 N.E.2d at 256. By permitting the State to admit C.C.'s pretrial testimony into evidence in lieu of her live testimony, the trial court did not violate Howard's confrontational rights since C.C.'s deposition was given under oath and at Howard's request. *See Crawford,* 541 U.S. at ——, 124 S.Ct. at 1374; *Guy,* 755 N.E.2d at 254. Consequently, we hold that the evidence does

not support a showing of manifest abuse resulting in a reversal of the trial court's decision. *Guy*, 755 N.E.2d at 252.

### III. *Admission of Evidence*

■ Howard argues that the trial court erred by admitting testimony regarding the content of a Computer Aided Dispatching Report (CAD Report), indicating that Brooks had made an allegation of molestation against him in 1998. In particular, Howard maintains that the CAD Report was a police report and thus, did not fall within the public records exception of the hearsay rules. Therefore, Howard concludes, testimony based upon this report constituted inadmissible hearsay.

■ We review a trial court's ruling to exclude or admit evidence under an abuse of discretion standard. *Pickens v. State*, 764 N.E.2d 295, 297 (Ind.Ct.App. 2002). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied*. However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse if, "the error is inconsistent with substantial justice" or if, "a substantial right of the party is affected." *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). However, any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Stephenson v. State*, 742 N.E.2d 463, 481 (Ind.2001), *cert. denied*, 534 U.S. 1105, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002).

Here, Detective Scott McKinney of the Hamilton County Sheriff's Department (Detective McKinney) testified that during a conversation with Tom Madden of the same police department he learned about the existence of a CAD Report establishing that Brooks had filed a police report alleging molestation incidents against Howard in 1998. Although the State never offered the CAD Report itself into evidence, Detective McKinney testified to its contents based on his reading of the Report.

■ We acknowledge that Indiana Evidence Rule 803 defines several exceptions to the hearsay rule. Section 8 of Ind. Evidence Rule 803, regarding public records and reports, specifically exclude investigative reports by police and other law enforcement personnel from the admissible exceptions to the hearsay rule, except when they are offered by an accused in a criminal case. Thus, according to this rule, Detective McKinney's testimony about the content of the CAD Report is clearly inadmissible. Nevertheless, any error caused by the admission of Detective McKinney's testimony is harmless since it was cumulative of other evidence previously admitted. *See id.* Specifically, our review of the record discloses that on cross-examination, Brooks admitted to have made a molestation report against Howard in 1998. As result, we find the admission of Detective McKinney's testimony based on hearsay evidence to be harmless error. *See id.*

### IV. *Order in Limine*

■ Next, Howard asserts that the trial court erred by enforcing Howard's Motion in Limine, prohibiting the introduction of testimony indicating violence between Howard and Brooks based on Indiana Evidence Rule 404(b). It is well established that the granting of a motion in limine does not determine the ultimate admissibility of the evidence. *Godby v. State*, 736 N.E.2d 252, 255 (Ind.2000), *reh'g*

*denied.* Rather, the purpose of a ruling in limine is to prevent the presentation of potentially prejudicial evidence until the trial court can rule on the admissibility of the evidence in the context of the trial itself. *Francis v. State,* 758 N.E.2d 528, 533 (Ind.2001). If the trial court errs by admitting evidence, the exclusion of which was sought by the motion in limine, then the error is in admitting the evidence at trial in violation of an evidentiary rule, not in rescinding a previous order in limine. *Id.*

As we stated before, the evidentiary rulings of a trial court are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Willingham v. State,* 794 N.E.2d 1110, 1116 (Ind.Ct.App.2003). A trial court's decision to admit or exclude evidence will not be overturned absent a showing of a manifest abuse resulting in the denial of a fair trial. *Id.*

In the instant case, on October 28, 2003, the trial court, pursuant to Howard's motion in limine, excluded evidence of any alleged violence or other uncharged crimes committed by him, pursuant to Indiana Rules of Evidence 401, 403, and 404(b). However, during trial, Howard sought to introduce testimony from one of his witnesses establishing that C.C. had told her that Brooks had once walked into the room when Howard was molesting her, that Howard had thrown Brooks against the wall, and that the police had been called. After an initial refusal by the trial court to grant Howard leave from his motion in limine as the testimony pertained to violence, the trial court allowed Howard an offer to proof outside the presence of the jury. Upon hearing Howard's offer to proof, the trial court concluded "I don't see any reason as it pertains to the issue of [Brooks] walking in and [Howard] throwing [Brooks] against the wall, I'm not lift-

ing the [m]otion in [l]imine on that issue." (Tr. p. 838).

▬▬▬ Indiana Evidence Rule 404(b) provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident . . .

This rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so-called "forbidden inference." *Iqbal v. State,* 805 N.E.2d 401, 406 (Ind.Ct.App. 2004). A consideration of the admissibility of evidence under Evid. R. 404(b) necessarily includes the relevancy test of Evid. R. 401 and the balancing test of Evid. R. 403. *Id.* at 408–09. Pursuant to Evid. R. 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* at 409. Nevertheless, under Evid. R. 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.*

Our review of the evidence supports that the trial court properly refused Howard's request to rescind the order in limine with respect to Howard's act of violence against Brooks. Not only would this testimony invade into the forbidden inference, as it would merely establish Howard's propensity to commit prior bad acts without serving any other purpose, the testimony is also irrelevant in light of the molestation charges committed against C.C., and would be prejudicial to Howard. Accordingly, we find no abuse of discretion in the trial

court's enforcement of its order in limine against Howard.

### V. *Motion for Mistrial*

Howard next contends that the trial court abused its discretion by denying his motion for mistrial. Specifically, Howard maintains that the State is responsible for C.C.'s breakdown because they exercised bad faith in the production of its key witness. Consequently, Howard asserts that C.C.'s breakdown on the witness stand resulted in a sympathetic effect on the jury and unfair prejudice towards Howard.

A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Banks v. State,* 761 N.E.2d 403, 405 (Ind.2002). To prevail a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Ziebell v. State,* 788 N.E.2d 902, 909 (Ind.Ct.App.2003). The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Id.* We will reverse the trial court's determination only when an abuse of discretion can be established. *Id.*

Howard now claims that the State's bad faith by placing C.C. on the witness stand when it had notice of her likely refusal to testify resulted in extreme prejudice and entitles him to a mistrial. However, the premise underlying a motion for a mistrial presupposes that an error of some type occurred in the first place. *Johnson v. State,* 749 N.E.2d 1103, 1106 (Ind.2001). Here, as we analyzed in Part II, we failed to find any bad faith on the part of the State by calling C.C. as a witness on the day of trial. Consequently, we conclude that the trial court did not abuse its discretion by denying Howard's motion for a mistrial where there was no error. *See id;* *Ziebell,* 788 N.E.2d at 909.

### VI. *Jury Instructions*

Howard argues that the trial court abused its discretion when it instructed the jury regarding the deposition testimony. In particular, Howard alleges that Final Instruction No. 7 unduly highlights C.C.'s deposition testimony and thus unfairly prejudiced his substantial due process rights.

Instructing the jury lies within the sole discretion of the trial court. *Edgecomb v. State,* 673 N.E.2d 1185, 1196 (Ind.1996). When reviewing the propriety of the trial court's decision to refuse a tendered instruction, this court must consider the following: (1) whether the instruction is supported by the evidence in the record; (2) whether the instruction correctly states the law; and (3) whether the other instructions adequately cover the substance of the denied instruction. *McBride v. State,* 785 N.E.2d 312, 316 (Ind.Ct.App.2003). Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Edgecomb,* 673 N.E.2d at 1196. Nevertheless, before a defendant is entitled to a reversal, he must affirmatively show that the instruction error prejudiced his substantial rights. *McBride,* 785 N.E.2d at 316.

The contested Final Jury Instruction No. 7 reads as follows: "[s]ome testimony was presented by way of a deposition which was read to you. This evidence is to be considered in the same light and subject to the same tests that are applied to the testimony of other witnesses." (Appellant's App. p. 36). In an attempt to counterbalance this instruction, Howard proffered his own proposed jury instruction, which stated: "[C.C.] did not testify in this trial. Therefore, you did not have an opportunity to assess her credibility. The

fact that you did not have an opportunity to assess her credibility can be used by you in your deliberations." (Appellant's App. p. 24). The trial court, after hearing argument from both parties on Howard's proposed jury instruction, refused to accept the tendered instruction because a general instruction on the credibility of witnesses was already included in the complete set of jury instructions.

Comparing the deposition evidence to exhibits, Howard claims that since the jury was not specifically instructed in how to evaluate exhibits, they also did not need a specific instruction to consider deposition testimony. Thus, Howard asserts, to single out the deposition testimony unduly highlights and emphasizes this testimony to the expense of all other witness and exhibit testimony, and accordingly, results in Howard's extreme prejudice. We find Howard's argument to be without merit. As noted by the trial court, the inclusion of deposition testimony in a criminal trial is a rare occurrence. The record shows that in order to draft Final Jury Instruction No. 7, the trial court initially consulted the civil jury instruction patterns. Only after review of the civil jury instruction on depositions, the trial court was able to locate its criminal equivalent. Therefore, we conclude that the Final Jury Instruction No. 7, in its general format, was necessary to inform the jury on how to perceive and evaluate deposition testimony.

█ Moreover, we are not persuaded that Final Jury Instruction No. 7 unnecessarily emphasizes C.C.'s testimony. Reviewing the language of this final instruction, we recognize that it references deposition testimony in general and instructs the jury in the assessment of deposition testimony. In contrast, Howard's proffered jury instruction would have unduly highlighted C.C.'s testimony and credibility. Instructions that needlessly emphasize a particular witness, evidentiary fact, or phase of the case have long been disapproved. *Ludy v. State*, 784 N.E.2d 459, 461 (Ind.2003). As a result, we agree with the trial court that the issue of evaluating witness testimony and credibility was sufficiently covered by the general jury instruction on credibility issues. In sum, we find that the trial court did not abuse its discretion by reading Final Jury Instruction No. 7 and rejecting Howard's proposed jury instruction. *See Edgecomb*, 673 N.E.2d at 1196.

## VII. Inconsistent Jury Verdicts

█ Lastly, Howard contends that the jury's verdict is impermissibly inconsistent. Specifically, he alleges that since both Count I and Count II allege child molestation as a Class A felony, the jury's guilty verdict on Count I is inconsistent with his acquittal on Count II.

█ We review verdicts for consistency and will take corrective action if necessary. *Owsley v. State*, 769 N.E.2d 181, 183 (Ind.Ct.App.2002), *reh'g denied, trans. denied*. While perfectly logical verdicts are not demanded, only extremely contradictory and irreconcilable verdicts warrant corrective action by this court. *Id.* In practice, Indiana courts have routinely made an effort to ensure that opposing verdicts on different counts can be rationally reconciled. In this regard, we stated that verdicts are inconsistent only where they cannot be explained by weight and credibility assigned to the evidence. *Id.* at 184. Thus, an acquittal on one count will not result in reversal of a conviction on a similar or related count because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing

element. *Id.* (quoting *Neuhausel v. State*, 530 N.E.2d 121, 123 n. 2 (Ind.Ct.App. 1988)).

■ Accordingly, verdicts that initially may seem inconsistent on some level are not legally inconsistent if they can be explained by the fact-finder's exercise of its power to assign the proper weight to and either accept or reject certain pieces of evidence. *Id.* For example, in *Jackson v. State*, 540 N.E.2d 1232, 1234 (Ind.1989), our supreme court held that, because the jury was free to believe some portions of the victim's testimony but reject other portions, the defendant's conviction for one count of rape was not inconsistent with his acquittal on a second count of rape that allegedly occurred at another time and place, although both counts were allegedly perpetrated against the same victim.

In the present case, to convict Howard of Count I, child molesting, as a Class A felony, the State was required to prove that Howard "did, perform or submit to deviate sexual conduct with [C.C.], by placing his penis in the mouth of [C.C.], a child who was then under fourteen (14) years of age, having been born October 14, 1991." (Appellant's App. p. 9). To convict him of Count II, child molesting, as a Class A felony, the State had to prove that Howard "did perform or submit to deviate sexual conduct on [C.C.], by placing his mouth on the vagina of [C.C.], a child who was then under fourteen years of age, having been born October 14, 1991." (Appellant's App. p. 9). At the close of the jury trial, the jury convicted Howard of Count I, while acquitting him on Count II.

Here, in weighing the evidence, the jury could have concluded that Howard committed child molestation by placing his penis in C.C.'s mouth, but did not commit child molestation by placing his mouth on her vagina. *See Owsley*, 769 N.E.2d at 184. Our review of the record reflects that during her deposition testimony, C.C. made several references to Howard placing his penis in her mouth. Although many of these references are not very specific in time, she clarifies that on one distinct occasion "[y]ellow stuff" came out of his penis. (Tr. p. 632). On the other hand, the record only indicates one instance where C.C. testifies to Howard "licking her vagina." (Tr. p. 620).

■ Nevertheless, Howard now asks us to reverse the jury verdict by encouraging this court to discredit C.C.'s entire testimony. He maintains that if the jury rejected C.C.'s credibility on Count II, they should have done the same on Count I. However, we are mindful that it is not within our province to attempt to interpret the thought process of the jury in arriving at their verdict. The reason for allowing the jury to render verdicts, that are seemingly inconsistent, inheres within our system of jurisprudence. *Parks v. State*, 734 N.E.2d 694, 700 (Ind.Ct.App.2000). The jurors are the triers-of-fact, and in performing this function, they may attach whatever weight and credibility to the evidence as they believe is warranted. *Id.*

Consequently, we hold that the jury verdicts were not impermissibly inconsistent. The record clearly shows that Count I differed in a factual element from Count II. Under these circumstances, we must conclude that the jury doubted the weight or credibility of the evidence presented in support of this distinguishing element. *See Owsley v. State*, 769 N.E.2d at 184. Therefore, we find that it is squarely within the jury's exercise of power to assign the proper weight to and either accept or reject certain pieces of C.C.'s testimony. As a result, we hold that the verdicts are consistent and refuse to take corrective action. *See id.* at 183.

## CONCLUSION

Based on the foregoing, we conclude that (1) no fundamental error occurred when C.C., a minor victim of child molestation, was allowed to testify prior to the trial court determining her competency to testify; (2) the State did not violate Howard's right of confrontation by presenting C.C.'s deposition testimony to the jury after the trial court declared her to be unavailable; (3) the trial court did not abuse its discretion in admitting hearsay evidence; (4) the trial court did not abuse its discretion by denying Howard's request to introduce evidence which would violate his own motion in limine; (5) the trial court did not err in denying Howard's motion for mistrial; (6) the trial court properly instructed the jury regarding deposition testimony; and (7) the jury's verdicts were not impermissibly inconsistent.

Affirmed.

CRONE, J., and VAIDIK, J., concur.