Donald RIEHLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 15A05–0311–CR–557.

Court of Appeals of Indiana.

March 1, 2005.

Transfer Denied May 12, 2005.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Donald Riehle appeals his convictions for Child Molesting as a Class A felony, Child Molesting as a Class C felony, Conspiracy to Commit Child Molesting as a Class A felony, and Conspiracy to Commit Child Molesting as a Class C felony. Because the evidence shows that Riehle performed deviate sexual conduct with the nine-year-old victim and that Riehle entered into an agreement with the child's mother to do so, the evidence is sufficient to support his convictions for Child Molesting as a Class A felony and Conspiracy to Commit Child Molesting as a Class A felo-

ny. Further, the trial court did not abuse its wide discretion in allowing the State to lead the victim during her direct examination given her young age and obvious reluctance to testify about the details of the crimes. In addition, the trial court did not commit fundamental error in admitting an entire tape recording of a conversation between Riehle and an informant into evidence given its relevance to the charged crimes. Moreover, the continuing crime doctrine does not apply to the facts of this case, and therefore, the State properly charged and convicted Riehle. Finally, we remand this case for resentencing in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

### Facts and Procedural History

Ruth Ann Reed is the mother of K.R., who was nine years old at the time of the events underlying this case. Fifty-nine-year-old Riehle had been friends with the Reed family for many years. On at least two occasions in 2002, Ruth took K.R. to Riehle's camper. Riehle would then give Ruth money "in return for sex" with K.R. Tr. p. 89. On the first occasion, Ruth stood outside the camper and looked inside through a window. Riehle laid on top of K.R., who still had her clothes on, until he had an erection and ejaculated. On the second occasion, Ruth left K.R. in the camper and went outside to use the restroom. When Ruth returned to the camper, K.R. and Riehle were lying in Riehle's bed. K.R.'s pants were pulled down and Riehle had his penis between her legs. Riehle laid there until he had an erection, which took approximately twenty to twenty-five minutes. Ruth pled guilty to Promoting Prostitution as a Class B felony and Neglect of a Dependent Child as a Class D felony for her role in these crimes.

Also during this same time frame, there were sexual encounters with Riehle, K.R., and K.R.'s great-aunt Sharon Reed in Riehle's camper. During these encounters, Sharon and K.R. would wrestle on Riehle's bed while he watched them from outside through a window. Upon getting aroused, Riehle would join K.R. and Sharon on the bed. Riehle would then "get on" Sharon "to get satisfied." *Id.* at 33. Sometimes, Riehle would "hold [K.R.] down beside [them]." *Id.* at 42. On one occasion, Riehle was "on top of [K.R.]" and ejaculated on her stomach. *Id.* at 37. Riehle paid Sharon for sex and for participating in the touching sessions with K.R. in the camper. Sharon pled guilty to Child Molesting as a Class C felony for her role in these crimes.

In February 2003, Ronald Lataille, who was facing charges of defrauding Riehle, told police officers that he could give them damaging information about Riehle. Lataille was then fitted with a wire transmitter to tape record his exchanges with Riehle. Lataille approached Riehle under the guise of wanting information and advice about having a sexual encounter with K.R. Riehle told Lataille that he had tried to have sexual intercourse with K.R. but she would not do it. Riehle admitted, however, that he rubbed K.R.'s vagina with his leg and also rubbed her buttocks. Riehle also told Lataille that he looked forward to K.R. having pubic hair, that he could "get in her pants" whenever he wanted, and that her vagina was "nice and fat" for a girl her age. State's Ex. 15. Riehle explained that he had to give Sharon money to keep her quiet but that K.R. would not tell anyone. Riehle then offered to set up a sexual encounter between Lataille and K.R. and offered his own advice, such as to take things slow, that K.R. cannot have an orgasm while on top, and to wear a condom because K.R. had been with other men.

Shortly thereafter, Bonnie Haas, an investigator for the Dearborn County Divi-

sion of Family and Children, interviewed K.R. During the interview, K.R. told Haas that she had been naked with Riehle on several occasions in the camper and that Riehle "had put his peter in her butt." Tr. p. 165. K.R. also told Haas that Riehle had touched her vagina with his hand and body. *Id.*

The State charged Riehle with six counts, one of which it later dropped. Following a trial by jury, Riehle was convicted of four counts: Child Molesting as a Class A felony (deviate sexual conduct),[1] Child Molesting as a Class C felony (touching and fondling),[2] Conspiracy to Commit Child Molesting as a Class A felony,[3] and Conspiracy to Commit Child Molesting as a Class C felony.[4] Riehle was acquitted of the Class A felony child molesting charge that alleged he had sexual intercourse with K.R. The trial court sentenced Riehle to an aggregate sentence of 108 years. Riehle now appeals.

### Discussion and Decision

Riehle raises five issues on appeal. First, he contends that the evidence is insufficient to support his Class A felony convictions. Second, Riehle contends that the trial court erred in allowing the State to lead K.R. during her direct examination. Third, he contends that the trial court erred by admitting the entire tape recording of his conversation with Lataille into evidence. Fourth, Riehle contends that two of his convictions violate the continuing crime doctrine. Finally, he contends that his sentence violates *Blakely v. Washington.* We address each issue in turn.

### I. Sufficiency of the Evidence

■ Riehle first contends that the evidence is insufficient to support his Class A felony convictions for Child Molesting and Conspiracy to Commit Child Molesting. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* We will uphold the conviction if there is substantial evidence of probative value to support it. *Id.*

■ Riehle first argues that the evidence is insufficient to support his conviction for Child Molesting as a Class A felony. In order to convict Riehle of child molesting as a Class A felony as charged in this case, the State must have proved that Riehle, who was at least twenty-one years of age, performed deviate sexual conduct with K.R., who was under fourteen years of age. Ind.Code § 35–42–4–3(a)(1). "Deviate sexual conduct," in turn, is defined in relevant part as an act involving "a sex organ of one person and the mouth or anus of another person." Ind.Code § 35–41–1–9(1). The State alleged in the charging information that Riehle "touched his penis to the anus of [K.R.]" Appellant's App. p. 424.

■ On appeal, Riehle claims that the State failed to "prove beyond a reasonable doubt that [his] penis ever came in contact with K.R.'s anus." Appellant's Br. p. 8. In making this claim, Riehle challenges Haas' trial testimony and points out that he did not admit to touching his penis to K.R.'s anus during his secretly-recorded conversation with Lataille, a time when he had no

---

1. Ind.Code § 35–42–4–3(a)(1).

2. Ind.Code § 35–42–4–3(b).

3. Ind.Code §§ 35–42–4–3(a)(1), 35–41–5–2.

4. Ind.Code §§ 35–42–4–3(b), 35–41–5–2.

reason to lie. Although proof of anal penetration is not required to convict a defendant of child molesting by deviate sexual conduct, for an act to "involve" the anus there must be contact with the anus. *Downey v. State*, 726 N.E.2d 794, 798 (Ind. Ct.App.2000), *reh'g denied, trans. denied.* "The plain and ordinary meaning of 'anus,' or anal orifice, is 'the lower opening of the digestive tract, lying in the fold between the nates [buttocks], through which fecal matter is extruded.'" *Id.* at 797 (quoting Stedman's Medical Dictionary 95 (4th ed.1976)). In contrast, "[t]he 'buttocks,' or nates, are 'the prominence formed by the gluteal muscles,' or 'the two rounded prominences separated by a median cleft that form the lower part of the back ... and consist largely of the gluteus muscles.'" *Id.* (quoting Stedman's Medical Dictionary 923 (4th ed.1976) and Webster's Third New International Dictionary 305 (1976)) (citation omitted).

Here, K.R. told Haas, who then testified at trial, that Riehle "had put his peter *in* her butt." Tr. p. 165 (emphasis added). K.R., who was ten years old at the time of trial, also testified that Riehle's "peter" touched her "butt." *Id.* at 131. K.R. explained that the term "butt" is "the part of your body where you go poop out of." *Id.* at 72. K.R.'s testimony tracks the *Downey* court's definition of anus. Because there is evidence that Riehle's penis contacted K.R.'s anus, the evidence is sufficient to support Riehle's conviction for Child Molesting as a Class A felony. Accordingly, Riehle's argument is merely an invitation for us to reweigh the evidence, which we will not do.

■ Riehle next argues that the evidence is insufficient to support his conviction for Conspiracy to Commit Child Molesting as a Class A felony. In order to convict Riehle of conspiracy to commit child molesting as a Class A felony as

charged in this case, the State must have proved that Riehle, with intent to commit the felony, agreed with Ruth to commit Child Molesting as a Class A felony (sexual intercourse or deviate sexual conduct) and that Ruth performed an overt act in furtherance of that agreement. Ind.Code §§ 35–42–4–3(a)(1), 35–41–5–2. The State alleged that the overt act was Ruth taking K.R. to Riehle's camper for the purpose of Riehle performing or submitting to sexual intercourse or deviate sexual conduct with K.R.

■ On appeal, Riehle claims that "the evidence is insufficient to show that there was an agreement for intercourse or criminal deviate conduct." Appellant's Br. p. 13. In proving the agreement element of conspiracy, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence, which may include the overt acts of the parties in furtherance of the criminal act. *Stokes v. State*, 801 N.E.2d 1263, 1273 (Ind.Ct.App. 2004), *trans. denied; Weida v. State*, 778 N.E.2d 843, 847 (Ind.Ct.App.2002). In addition, the State does not have to prove that the felony was actually committed or even attempted. *See Weida*, 778 N.E.2d at 846.

Here, Ruth testified at trial that she needed money to pay for insurance and other things. As a result, she took K.R. to Riehle's camper to make some money. Specifically, Ruth testified that Riehle gave her money "[i]n return for sex ... [w]ith [K.R.]" Tr. p. 89. Ruth then described the two occasions that she took K.R. to Riehle's camper for this purpose. The first time, Riehle "hunch[ed]" on K.R. until he had an erection and ejaculated. *Id.* at 90. The second time, Riehle "had his penis between [K.R.'s] legs." *Id.* The circumstantial evidence shows that Ruth and Riehle had an agreement whereby

Ruth would receive money in exchange for Riehle having sexual encounters with K.R. In fact, Ruth brought K.R. to Riehle's camper on at least two occasions, during which time sexual encounters indeed occurred. That Riehle never had sexual intercourse with K.R. does not change the fact that an agreement for intercourse existed between Ruth and Riehle. Because there is evidence of an agreement between Ruth and Riehle to commit Child Molesting as a Class A felony, the evidence is sufficient to support Riehle's conviction for Conspiracy to Commit Child Molesting as a Class A felony.

## II. Leading Questions During Direct Examination

Riehle next contends that the trial court erred in allowing the State to lead K.R. during her direct examination. Indiana Evidence Rule 611(c) provides, "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony." Certain witnesses, including children and young, inexperienced, and frightened witnesses, may be asked leading questions on direct examination to develop their testimony. *Williams v. State*, 733 N.E.2d 919, 922 (Ind.2000); *Kien v. State*, 782 N.E.2d 398, 408 (Ind.Ct. App.2003), *trans. denied*. A leading question is one that suggests the desired answer to the witness. *Williams*, 733 N.E.2d at 922. The use of leading questions is limited in order to prevent the substitution of the attorneys language for the thoughts of the witness as to material facts in dispute. *Id.* "The trial court is afforded wide discretion in allowing leading questions and the trial courts decision will be reversed only for an abuse of discretion." *Bussey v. State*, 536 N.E.2d 1027, 1029 (Ind.1989).

On appeal, Riehle argues that the State extensively led K.R. during her di-

rect examination. However, he only points to one answer that resulted from a leading question by the State. That is, the State—immediately after reminding K.R. what she had said during her deposition—asked K.R. what part of Riehle touched her butt, to which K.R. responded "his peter." Tr. p. 131. K.R. was ten years old at the time of trial, and there is no indication that she had any experience with the court system other than this case. In addition, the record reflects that K.R. was extremely reluctant to testify. In fact, the State had to call K.R. to the stand on two separate occasions over the course of two days. Given K.R.s young age and reluctance to testify about the specifics of the case, the trial court did not abuse its wide discretion in allowing the State to use leading questions in order to elicit information from K.R. about the details of the sexual encounters she had with Riehle.

Regardless, K.R.s testimony that Riehles penis touched her butt is merely cumulative of, and less damaging than, Haas trial testimony that K.R. told her that Riehle "had put his peter *in* her butt." Tr. p. 165 (emphasis added). Accordingly, Riehle was not harmed by K.R.'s response to the State's question about what part of him touched her butt. *See Bussey*, 536 N.E.2d at 1029–30.

## III. Tape Recording

Riehle next contends that the trial court erred by admitting the entire tape recording of his conversation with Lataille into evidence. Specifically, Riehle argues that the trial court should have redacted the portions of the tape recording wherein he offered to set up a sexual encounter between Lataille and K.R. Because Riehle did not object at trial, he asserts that the error is fundamental.

The admission of evidence is within the sound discretion of the trial

court. *Holden v. State*, 815 N.E.2d 1049, 1053 (Ind.Ct.App.2004). We will reverse the trial court only for an abuse of discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts, and circumstances presented. *Id.* at 1053–54. Moreover, the fundamental error doctrine is extremely narrow. *Howard v. State*, 816 N.E.2d 948, 955 (Ind.Ct.App.2004). To qualify as fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* To be fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.*

 On appeal, Riehle claims that the portions of tape recording wherein he offered to set up a sexual encounter between Lataille and K.R. were inadmissible under Indiana Evidence Rule 404(b), which provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The rationale underlying Evidence Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant has a criminal propensity and therefore engaged in the charged conduct. *Holden*, 815 N.E.2d at 1054. In deciding whether the challenged evidence is admissible, we: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendants propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial

effect pursuant to Indiana Evidence Rule 403. *Roop v. State*, 730 N.E.2d 1267, 1270 (Ind.2000); *Holden*, 815 N.E.2d at 1054. In short, if the evidence bears on some issue other than criminal propensity and clears the balancing hurdle of Evidence Rule 403, then it is admissible. *Roop*, 730 N.E.2d at 1270.

 Here, Riehles offer to set up a sexual encounter between Lataille and K.R. bears on an issue other than his criminal propensity. That is, in offering to set up the sexual encounter, Riehle delved into the specifics of his own encounters with K.R. and offered his own advice based on those very encounters. In fact, our review of the tape recording reveals that it is difficult to separate Riehles offer to set up the sexual encounter between Lataille and K.R. from the specifics of Riehles encounters with K.R. because the two are so closely entwined. As for balancing, Riehles offer to set up the sexual encounter between Lataille and K.R. is undoubtedly prejudicial. However, because the offer is so entwined with the details of Riehles own sexual encounters with K.R., the relevance is also high, thereby clearing the hurdle.

Moreover, we note that Riehle now only objects to parts of the recording being admitted into evidence. Indeed, during the trial, he argued that portions of the tape support his contention that he did not have sexual intercourse with K.R., a charge of which he was ultimately acquitted. In so doing, he made the decision that the benefits of the tape recording outweighed its risks. Riehle cannot now pick and choose which portions of the tape recording should have been presented to the jury because his offer to set up the sexual encounter between Lataille and K.R. is inseparable from the evidence of his own wrongdoing, and completes and places in context the conversation. The

trial court did not commit error, much less fundamental error, in admitting the entire tape recording into evidence.

## IV. Double Jeopardy

Riehle next contends that his convictions for Class A felony conspiracy and Class C felony conspiracy violate Indiana double jeopardy principles and therefore should be vacated. Riehle concedes that his conspiracy convictions do not violate the statutory elements test or the actual evidence test. Rather, he argues "that the allegations for the two counts of child molesting and the allegations of the conspiracy to commit the two acts fall within the continuing crime doctrine." Appellant's Br. p. 26.

 The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. *Nunn v. State*, 695 N.E.2d 124, 125 (Ind.Ct.App. 1998). Although Riehle frames this issue on appeal as a violation of Indiana double jeopardy principles, we note that the continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, the doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime. *Boyd v. State*, 766 N.E.2d 396, 400 (Ind.Ct.App.2002). In doing so, the continuous crime doctrine prevents the State from charging a defendant twice for the same continuous offense. *Id.*

 Essentially, Riehle begins his argument by noting that the overt act alleged for each conspiracy charge was Ruth transporting K.R. to his camper. His argument continues that the "bringing of K.R. to [ ] Riehle was thereafter followed by the molestation of the child" and "the bringing of the child was the means by which the molestation was accomplished." Appellant's Br. p. 26. He then concludes "bringing the child was a part of the continuing crime of child molesting" and thus, his convictions for child molesting and conspiracy cannot stand under the continuous crime doctrine. *Id.* at 26. We cannot agree.

First, the continuing crime doctrine applies only to actions sufficient in themselves to constitute criminal offenses. Here, the act of transporting K.R. to Riehle's camper is not sufficient in itself to constitute a crime. Thus, the continuing crime doctrine is not applicable to the instant case. Second, even if it was, Riehle's argument presumes that the conspiracy did not occur until the overt act of transporting K.R. occurred. However, "a person conspires to commit a felony, when, with the intent to commit the felony, he agrees with another person to commit the felony." I.C. § 35-41-5-2. While it is true that the state must prove that an overt act was performed in furtherance of the conspiracy, the conspiracy occurs at the point in time that an agreement to commit a felony with another is made. The reasonable inference from the evidence is that the agreement between Riehle and Ruth for Riehle to molest K.R. was made before Ruth transported K.R. to Riehle's camper. Thus, the conspiracy is separate in time from the child molesting and is not a continuous part of the child molesting charges.

## V. Sentencing

 Riehle last contends that his sentence violates *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* The State responds that Riehle has waived this issue for review by failing to object at the time of sentencing and that even if Riehle did not

waive this issue, *Blakely* does not implicate Indiana's sentencing scheme. We first observe that because *Blakely* was decided after Riehle was sentenced in this case, he has not waived this issue for review. *See Williams v. State*, 818 N.E.2d 970, 975 (Ind.Ct.App.2004). In addition, we have previously determined that *Blakely* implicates our sentencing scheme. *Strong v. State*, 817 N.E.2d 256, 261 (Ind.Ct.App. 2004).

 *Blakely* applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to a state sentencing scheme and found that it was unconstitutional. *See Teeters v. State*, 817 N.E.2d 275, 278–79 (Ind.Ct.App.2004), *trans. denied*. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 124 S.Ct. at 2536–38 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). The key to *Blakely* is whether the case involves "a sentence greater than what state law authorized on the basis of the verdict alone." *Id.* at 2538. According to the *Blakely* court, "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 2537 (emphasis in original).

In January 2005, the United States Supreme Court added to the *Blakely* progeny by its issuance of *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Until our supreme court rules on the issue, however, the application of *Apprendi*, *Blakely*, and *Booker* to

Indiana's sentencing mechanism is still not entirely clear. *Booker*'s statement that "when a trial judge exercises his *discretion* to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant," *id.* at 750 (emphasis added), could be read to exempt Indiana from the reach of these cases because Indiana's law does give judges discretion to select a sentence within a range. Unlike the Federal Sentencing Guidelines invalidated by *Booker*, Indiana does not have mandatory guidelines.

 But more relevant to Indiana, *Booker* makes clear that when an increase in a defendant's punishment is contingent on the finding of a fact other than a prior conviction that is not reflected in the jury's verdict or admitted by the defendant, that fact must be found by a jury beyond a reasonable doubt. *Id.* at 748–49. Under Indiana law, a sentence may not be enhanced beyond the presumptive unless the trial court finds as a fact the presence of a statutory aggravator. Ind.Code § 35–50–2–3 (murder sentence cannot be enhanced beyond presumptive without finding aggravator); § 35–50–2–4 (same for Class A felony); § 35–50–2–5 (same for Class B felony); § 35–50–2–6 (same for Class C felony); § 35–50–2–7 (same for class D felony). Indiana's sentencing scheme therefore is not discretionary as *Booker* uses the term. 125 S.Ct. at 750. Because a trial court cannot impose a sentence longer than the presumptive without finding a fact in the form of an aggravator, *Booker* requires that the aggravator be found by a jury unless it is reflected in the jury's verdict or admitted by the defendant.[5]

---

**5.** This conclusion is further supported by Justice Breyer's dissent in *Blakely*, which lays out four proposed methods states could use to comply with *Blakely*. *See Blakely*, 124 S.Ct. at 2552–60. The fact that none of those *Blakely*-compliant systems is like Indiana's system supports the conclusion that Indiana's current system does not comply with the Su-

Here, Riehle was convicted of two Class A felonies and two Class C felonies. The presumptive sentence for a Class A felony is thirty years, to which up to twenty years can be added. Ind.Code § 35–50–2–4. The presumptive sentence for a Class C felony is four years, to which up to four years can be added. Ind.Code § 35–50–2–6. The trial court sentenced Riehle to maximum terms of eight years for each of the Class C felonies and fifty years for each of the Class A felonies. The trial court then ordered three of these sentences to run consecutively,[6] for an aggregate sentence of 108 years. In doing so, the trial court identified five aggravators: (1) the risk that Riehle will commit additional crimes against children in the future; (2) Riehle has engaged in sexual activity with children in the past even though he has never been charged with doing so; (3) the heinous nature of the offenses; (4) Riehle is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; and (5) substantial psychological damage to K.R. beyond that normally experienced The trial court also identified two mitigators: Riehle has no criminal history and has been gainfully employed.

We note that in light of Riehle's absence of a criminal history, the aggravator that Riehle is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility does appear to implicate *Blakely. Cf. Teeters,* 817 N.E.2d at 279 (opining that the "in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility" aggravator does not implicate *Blakely* when it can be said to be derivative of the defendant's criminal history). Thus, whether this is a proper aggravator is a jury question.[7] Likewise, pursuant to *Blakely,* the remaining four aggravators must have been submitted to a jury and proved beyond a reasonable doubt, which was not done here. This then leaves no aggravators and two mitigators. Accordingly, we must remand this case for resentencing.[8]

Affirmed in part and reversed and remanded in part.

CRONE, J., concurs.

RILEY, J., concurs in part and dissents in part with separate opinion.

RILEY, Judge, concurring in part and dissenting in part.

I respectfully dissent from Part V, the majority's conclusion to remand the case for resentencing in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* As recognized by the majority, our United States Supreme Court held in *Blakely* that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the

---

preme Court's dictates. As Justice Breyer wrote, to comply with *Blakely* "a jury must find, not only the facts that make up the crime of which the offender is charged, but also all (punishment-increasing) facts about the way in which the offender carried out that crime." *Id.* at 2551 (parenthethical in original).

**6.** We would note for purposes of remand that *Blakely* is not implicated where a trial court orders consecutive sentences. *Cowens v. State,* 817 N.E.2d 255, 255 (Ind.Ct.App.2004).

**7.** We disagree with the dissent that the fact that inherent in the jury's guilty verdicts is a finding by the jury that Riehle would commit another crime because that particular issue—whether there was a risk of Riehle's committing another crime—was not submitted to the jury for consideration and as such we have no way of knowing whether the jury found this risk or whether it did not.

**8.** In light of this conclusion, we do not reach Riehle's argument that his 108–year sentence is inappropriate.

existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. *Id.*, 124 S.Ct. at 2536. Specifically, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Supreme Court defined this statutory maximum as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537. (emphasis in original). "In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). Furthermore, we are convinced that the Supreme Court's recent opinion in *United States v. Booker*, 543 U.S. ——, ——, 125 S.Ct. 738, 742, 160 L.Ed.2d 621 (2005) (Stevens, J., writing for the Court) does not alter the *Blakely* rule as it now applies in Indiana. As Justice Stevens espoused, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." *Id.*, —— U.S. at ——, 125 S.Ct. at 755. This statement is reinforced by Justice Breyer writing that, "the Court holds that . . . the Sixth Amendment requires juries, not judges to find facts relevant to sentencing." *Id.*, —— U.S. at ——, 125 S.Ct. at 756.

Accordingly, we concluded in *Krebs v. State*, 816 N.E.2d 469, 475 (Ind.Ct.App. 2004), that it appeared that our trial courts no longer have discretion to sentence a criminal defendant to more than the presumptive sentence unless the defendant waives his right to a jury at sentencing, a jury first determines the existence of aggravating factors, or the defendant has a criminal history.

In sentencing Riehle to an aggregate sentence of 108 years, the trial court identified five aggravating circumstances: (1) the risk that Riehle would commit another crime, as supported by the tape recorded conversation with Lataille; (2) uncharged allegations that Riehle has engaged in sexual activity with children in the past; (3) the heinous nature and the circumstances of the crime involved based upon the significant planning involved in carrying out these crimes and Riehle's violation of trust with K.R.; (4) Riehle's need of correctional or rehabilitative treatment that can best be provided in a penal facility; and (5) the substantial psychological damage caused to K.R. beyond that normally expected. The trial court found the following two mitigators: (1) Riehle's lack of criminal history; and (2) his gainful employment.

Unlike the majority, I find that based upon the evidence before this court, the jury properly found the existence of the aggravating factor that Riehle would commit another crime. At trial, the trial court properly admitted a tape recorded conversation between Riehle and Lataille, a police informant. In this recording, Riehle admitted to fondling K.R.'s buttocks and rubbing her vagina with his leg. He also told Lataille that he looked forward to K.R. having pubic hair, and that he could "get in her pants" anytime he wanted to. (State's Ex. 15). Moreover, during this conversation, Riehle stated his intention that when K.R. would be twelve to fifteen years old, he would have a "piece of ass" and that he would "mount that son of a butt right and left" as long as K.R. kept quiet. (State's Ex. 15). Additionally,

Riehle agreed to set up a sexual encounter between Lataille and K.R.

Thus, by introducing Riehle's admissions of his past criminal behavior and his clear intention to commit further criminal acts in the future, the State submitted the fact of Riehle's lack of future law abiding behavior to the jury. In turn, the jury, by finding Riehle guilty for child molesting as a Class A felony (deviate sexual conduct), conspiracy to commit child molesting as a Class A felony, child molesting as a Class C felony (touching and fondling), and conspiracy to commit child molesting as a Class C felony, properly considered Riehle's admissions and found them justified. Therefore, given *Blakely*'s clear language that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt," I find that the aggravator that Riehle would commit a future crime was properly submitted to the jury and proven beyond a reasonable doubt by the jury's guilty verdict on these particular Counts. *Id.*

However, I concur with the majority that the remaining four aggravators are invalid in light of *Blakely*. Nonetheless, if one or more aggravating circumstances cited by the trial court are found invalid on appeal, we must next decide whether the remaining circumstance or circumstances are sufficient to support the sentence imposed. *See Patrick v. State*, 819 N.E.2d 840, 848 (Ind.Ct.App.2004). As we explained in *Means v. State*, 807 N.E.2d 776, 778 (Ind.Ct.App.2004), *trans. denied:*

> Even one valid aggravating circumstance is sufficient to support an enhancement of a sentence. When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be up-

held. This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision. When a reviewing court "can identify sufficient aggravating circumstances to persuade it that the trial court would have entered the same sentence even absent the impermissible factor, it should affirm the trial court's decision." When a reviewing court "cannot say with confidence that the impermissible aggravators would have led to the same result, it should remand for re-sentencing by the trial court or correct the sentencing on appeal."

Here, I identified one valid aggravator: the risk of committing a future crime. The trial court also found two mitigators: (1) Riehle' lack of prior criminal history, and (2) his gainful employment. In its sentencing statement, the trial court determined the aggravators to be significant enough to not only aggravate the sentence, but to run the sentences consecutively.

Given the importance of the remaining aggravator and the insignificance of the mitigating circumstances, I refuse to hold that the trial court would have imposed a different sentence. *See id.* Therefore, I find that the trial court did not err by imposing an enhanced sentence. Accordingly, I disagree with the result reached by the majority.