## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2018, 8:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Steven E. Ripstra
Jacob P. Wahl
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jacob Youngblood,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 7, 2018

Court of Appeals Case No.
19A01-1709-CR-2037

Appeal from the Dubois Circuit Court

The Honorable Nathan A. Verkamp, Judge

Trial Court Cause No.
19C01-1610-F4-853

**Najam, Judge.**

# Statement of the Case

Jacob Youngblood appeals his convictions for two counts of child molesting, as Level 4 felonies, and the sentences imposed thereon, following a jury trial. Youngblood raises two issues for our review, which we restate as the following four issues:

1. Whether the State presented sufficient evidence to support his convictions.

2. Whether his two convictions violate the continuing crime doctrine.

3. Whether the trial court abused its discretion when it sentenced him.

4. Whether his aggregate term of six years incarceration is inappropriate under Indiana Appellate Rule 7(B).[1]

We affirm.

# Facts and Procedural History

In August of 2016, K.Q., who was twelve-years-old at the time, went to Holiday World with her family, which included her seventeen-year-old step-brother, Youngblood. The family rented a hotel room in Jasper. While

---

[1] In this part of his brief on appeal, Youngblood does not clearly articulate the proper legal standards under Indiana Appellate Rule 7(B) for our review of his sentence. Nonetheless, we prefer to resolve issues raised on appeal on their merits, and Youngblood's argument on this issue is a clear attempt to invoke Appellate Rule 7(B). We address it accordingly.

everyone was asleep in the room, K.Q. woke up to Youngblood touching her breast on the inside of her shirt. K.Q. told Youngblood "to go lay back down" and that she "was telling mom in the morning." Tr. Vol. II at 51-52. Youngblood responded, "please don't tell on me." *Id.* at 52. K.Q. was "really scared" and "afraid to get up" because Youngblood had several "knives" that he carried around. *Id.* But Youngblood stopped touching her, and K.Q. "went back to sleep." *Id.*

[4] Some time thereafter that same night, K.Q. "woke up a second time" to Youngblood's "hand . . . in my pants touching me in my private part where I pee at." *Id.* at 53. K.Q. also saw that Youngblood was "laying on the ground" and that "the side of his arm [was] going up and down." *Id.* K.Q. again told Youngblood to "go lay down" and that she was "going to tell mom." *Id.* at 54. K.Q. "was so scared" that she "urinated in the chair."

[5] The next morning, K.Q. told her mother what had happened the night before. K.Q.'s brother and aunt both observed a wet spot where K.Q. had slept the night before. Urinating in her sleep was "not something" K.Q. did. *Id.* at 96.

[6] K.Q.'s family contacted authorities and, on October 4, the State charged Youngblood with child molesting, as a Level 4 felony; child molesting, as a Level 4 felony; and sexual battery, as a Level 6 felony. K.Q., her mother, and her aunt each testified at Youngblood's ensuing jury trial. The jury found Youngblood guilty of the two Level 4 felony offenses. After a sentencing

hearing, the trial court ordered Youngblood to serve six years for each offense, which the court ordered to be served concurrently. This appeal ensued.

## Discussion and Decision

### Issue One: Sufficiency of the Evidence

On appeal, Youngblood first asserts that K.Q.'s testimony, standing alone, was not sufficient evidence to support both of Youngblood's two convictions. For sufficiency challenges, we neither reweigh evidence nor judge witness credibility. *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016). We consider only the evidence most favorable to the judgment together with all reasonable inferences that may be drawn from the evidence. *Id.* We will affirm the judgment if it is supported by substantial evidence, even if the evidence is conflicting. *Id.*

Although Youngblood acknowledges the well-settled rule that "[c]onvictions for child molesting may rest upon the uncorroborated testimony of the victim," *Barger v. State*, 587 N.E.2d 1304, 1308 (Ind. 1992), he nonetheless asserts that K.Q.'s testimony, without more, cannot be the basis for his convictions. We reject Youngblood's argument. The jury was free to credit K.Q. and give her testimony—which plainly establishes a factual basis for his two convictions—controlling weight, and we will not reconsider the jury's assessments. Further, K.Q.'s testimony was not uncorroborated; K.Q.'s mother and aunt each testified and corroborated at least portions of K.Q.'s testimony. We hold that the State presented sufficient evidence to support Youngblood's convictions.

Youngblood also asserts that his two convictions, one for touching K.Q.'s breasts while she slept and the other for touching her vagina at a later time that same night, violate the continuing crime doctrine. As we have explained:

> "The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), *trans. denied*. "[T]he continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy." *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). As we have explained:

>> The statutory elements and actual evidence tests [of double jeopardy, as described in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999),] are designed to assist courts in determining whether two separate[ly] chargeable crimes amount to the "same offense" for double jeopardy purposes. The continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct[,] chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single[,] chargeable crime. In doing so, the continuous crime doctrine prevents the state from charging a defendant twice for the same continuous offense.

> *Boyd v. State*, 766 N.E.2d 396, 400 (Ind.Ct.App.2002) (emphasis original). That is, "while Indiana's double jeopardy clause prohibits convicting a defendant of two or more distinct[,] chargeable crimes when they constitute the 'same offense' . . . , it

also prohibits" charging a defendant "multiple times for the same continuous offense." *Walker*, 932 N.E.2d at 736-37.

*Chavez v. State*, 988 N.E.2d 1226, 1228 (Ind. Ct. App. 2013) (alterations and omissions original to *Chavez*), *trans. denied.* Further, although Youngblood did not object on these grounds in the trial court, the issue is not waived because, as a category of Indiana's prohibition against double jeopardy, a violation, if shown, would constitute fundamental error. *Id.* at 1228-29.

[10] According to Youngblood, his touching of K.Q.'s breasts and his touching of her vagina were "so compressed in terms of time, place, singleness of purpose, and continuity of action" that they amounted to one act. *See id.* at 1228. In particular, Youngblood claims that K.Q.'s testimony "does not differentiate between her body parts[] or establish a time line during which the two molestations happened." Appellant's Br. at 15.

[11] Youngblood is incorrect. K.Q. unambiguously testified that she woke up to Youngblood touching her breasts, told him to stop, fell back asleep, and, sometime thereafter that same night, woke up to Youngblood touching her vagina. K.Q.'s testimony demonstrates a clear cessation of one act and, at a subsequent time, the commencement of a second act. His two convictions do not violate the continuing crime doctrine. *See, e.g.*, *Chavez*, 988 N.E.2d at 1229-30. We affirm Youngblood's convictions.

## Issue Three: Sentencing Discretion

[12]     Youngblood next argues that the trial court abused its discretion when it sentenced him because the trial court did not state what factors it relied upon when it determined his sentence. Youngblood further asserts that the trial court abused its discretion when it did not find mitigating factors that, according to Youngblood, are clearly supported by the record.

[13]     As our Supreme Court has explained:

> sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. . . . So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. . . . An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

> Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors. And this is so because once the trial court has entered a sentencing statement, which may or may not include the existence of aggravating and mitigating factors, it may then "impose any sentence that is . . . authorized by statute; and . . . permissible under the Constitution of the State of Indiana." I.C. § 35-38-1-7.1(d).

*Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007) (some citations and quotation marks omitted).

[14] The trial court did not abuse its discretion when it did not identify or rely on aggravating or mitigating factors. The trial court imposed the advisory sentence of six years for each of Youngblood's convictions, and the court ordered those sentences to be served concurrently. *See* I.C. § 35-50-2-5.5. The trial court has no obligation to explain its imposition of an advisory sentence—as a matter of law, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Anglemyer*, 868 N.E.2d at 494; *see also* I.C. § 35-38-1-1.3.

[15] Neither did the trial court abuse its discretion when it declined to accept Youngblood's proposed mitigating circumstances. While Youngblood reiterates his proposed mitigating circumstances on appeal, his argument on appeal does not claim, let alone demonstrate, that any of his proffered mitigators were significant or clearly supported by the record. *Anglemyer*, 868

N.E.2d at 493 (requiring the defendant to show on appeal that his proposed mitigators were both significant and clearly supported to demonstrate that the trial court abused its discretion in omitting them); *see* Ind. Appellate Rule 46(A)(8)(a) (requiring an appellant to support his arguments with cogent reasoning). As such, we cannot say that the trial court's imposition of the advisory sentences was an abuse of the court's discretion.

### Issue Four: Appellate Rule 7(B)

[16] Finally, Youngblood asserts that his six-year aggregate term is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." As the Indiana Supreme Court has explained, the "principal role of appellate review" under Rule 7(B) "should be to attempt to leaven the outliers" and not to "achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant has the burden to persuade us that his sentence is inappropriate. *Anglemyer*, 868 N.E.2d at 494.

[17] Youngblood asserts that his sentence is inappropriate in light of the nature of the offenses because the trial court did not enter a sentencing statement. He asserts that his sentence is inappropriate in light of his character because he has no prior adult criminal record, he might respond well to probation or a short term of incarceration, he grew up with little parental involvement, he

voluntarily agreed to a waiver from the juvenile court to adult court, and he has a history of mental illnesses.

[18] We cannot say that Youngblood's aggregate six-year term is inappropriate in light of the nature of the offenses. Youngblood physically molested his then-twelve-year-old step-sister twice in a single night, progressing from touching her breasts to later—and having already been caught touching her breasts—to her vagina, and while he was touching her vagina he was simultaneously moving his arm "up and down." Tr. Vol. II at 53. Further, K.Q. was so afraid of Youngblood, who carried knives around with him, that she urinated where she was sleeping after the second incident.

[19] Neither is his sentence inappropriate in light of his character. While Youngblood asserts that he has no prior adjudications or convictions against him, the presentence investigation report states that he had been placed in the custody of Kentucky's Department of Juvenile Justice for three years, the maximum time allowed by Kentucky law, on two counts of sexual abuse of a victim under twelve years of age. He also has a prior Kentucky adjudication for possession of marijuana. And, during the instant sentencing hearing, an investigating officer testified that Youngblood had kept a swimsuit belonging to K.Q. as a "trophy," and that Youngblood had not only not taken responsibility for his actions but had demonstrated behavior that suggested "[j]ust the opposite." Tr. Vol. III at 52-53. Youngblood's aggregate term of six years is not inappropriate in light of the nature of the offenses and his character. We affirm his sentence.

Affirmed.

Mathias, J., and Barnes, J., concur.