Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 14 2013, 5:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHON MCDONALD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1210-CR-483 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Jeffrey V. Boles, Judge
Cause No. 32C01-1009-FA-1

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jonathon McDonald appeals his convictions for three counts of child molesting as class A felonies and two counts of vicarious sexual gratification as class B felonies. McDonald raises three issues, which we revise and restate as:

I.   Whether any error in the admission of the testimony of the child victim is harmless;

II.  Whether the trial court abused its discretion in denying McDonald's motions for mistrial; and

III. Whether an accumulation of certain alleged errors constitute fundamental error.

We affirm.

FACTS[1] AND PROCEDURAL HISTORY

McDonald has three children, A.M., his daughter born on April 28, 2001, his son J.M., who was five years old in August 2008, and his daughter K.M., who was four years old in August 2008. Between July 2007 and August 2008, McDonald inserted his penis into J.M.'s anus, McDonald and J.M. placed their mouths on each other's penises, and McDonald had or helped J.M. insert his penis into A.M.'s vagina and anus. McDonald told A.M. and J.M. not to tell anyone.

In the summer of 2008, McDonald's three children were removed from the care of McDonald and his wife by the Department of Child Services ("DCS") due to unsanitary conditions in the home. State v. McDonald, 954 N.E.2d 1031, 1032 (Ind. Ct. App. 2011). The foster mother reported that the children were acting out sexually and that A.M. claimed McDonald had molested her. Id. During the initial interviews, J.M. was unable

---

[1] The facts recited here are taken in part from this court's previous opinion in State v. McDonald, 954 N.E.2d 1031 (Ind. Ct. App. 2011).

to communicate due to severe speech delays and impaired hearing, and as a result DCS did not substantiate sexual abuse allegations against McDonald as to J.M. Id.

In December 2008, the State charged McDonald with two counts of felony child molesting as class A felonies and one count of child molesting as a class C felony related to McDonald's alleged actions against A.M. and three counts of neglect of a dependent as class D felonies related to the living conditions for A.M., J.M., and K.M. The State later added a count of performing sexual conduct in the presence of a minor as a class D felony for having sexual intercourse in the presence of A.M. Id. at 1032-1033. In March 2009, McDonald pled guilty to performing sexual conduct in the presence of a minor as a class D felony and was sentenced to three years in the Department of Correction, and the State dismissed the remaining charges. Id. at 1033. After receiving speech therapy which started in November 2008, J.M. was reinterviewed in July 2010, and, based on the interview, DCS substantiated sexual abuse allegations against McDonald related to J.M. Id.

In September 2010, the State charged McDonald, as amended, with: Count I, child molesting as a class A felony for deviate sexual conduct involving the sex organ of McDonald and the anus of J.M.; Count II, child molesting as a class A felony for deviate sexual conduct involving the sex organ of McDonald and the mouth of J.M.; Count III, child molesting as a class A felony for deviate sexual conduct involving the sex organ of J.M. and the mouth of McDonald; Count IV, vicarious sexual gratification as a class B felony for inducing or causing J.M. to engage in sexual intercourse with another child under the age of sixteen; and Count V, vicarious sexual gratification as a class B felony for inducing or causing J.M. to engage in deviate sexual conduct with another person.

3

McDonald filed a motion to dismiss the charges against him in December 2010, arguing that the charges should be dismissed pursuant to Indiana's successive prosecution statute, and the trial court granted the motion. Id. The State appealed the court's ruling, and this court reversed the ruling and remanded for further proceedings. Id. at 1035. In July 2012, the trial court granted the State permission to file an amended information related to the counts of vicarious sexual gratification to correct a scrivener's error. The State filed a notice of intent to offer evidence under Ind. Evidence Rule 404(b) on July 13, 2012. McDonald filed a motion *in limine* seeking to exclude evidence of prior crimes or misconduct on July 19, 2012, and the court granted the motion. The State then filed an amended notice of intent to offer evidence under Ind. Evidence Rule 404(b) on July 23, 2012, which included evidence related to sexual acts and touches that A.M. was forced to participate in with McDonald. At his jury trial, the evidence included the testimony, among others, of J.M., A.M., Plainfield Police Detective Allison Ritter, the foster mother of J.M. and A.M., the children's bus driver, a volunteer at J.M.'s church group, and a forensic interviewer. During the trial, McDonald challenged the competency of J.M., arguing in part that the State failed to demonstrate that J.M. understood the difference between telling a lie and telling the truth or that he understood the consequences of lying, and the court permitted J.M. to testify. In addition, McDonald filed two motions for mistrial, one of which was based upon a statement by A.M. that McDonald had sex with her, and the other of which was based upon alleged vouching testimony of Detective Ritter. The court denied the motions. The jury found McDonald guilty as charged on all five counts. The court sentenced McDonald to forty years for each of his convictions for child molesting as class B felonies, to be served concurrently with each other, and ten

4

years for each of his convictions for vicarious sexual gratification as class A felonies, to be served concurrently with each other and consecutive to the sentences for child molesting, for an aggregate sentence of fifty years.

## DISCUSSION

### I.

The first issue is whether any error in the admission of J.M.'s testimony is harmless. McDonald contends that the trial court abused its discretion in determining that J.M. was competent to testify at trial. McDonald specifically asserts that J.M. is learning disabled with a communication disorder and has a low IQ, that McDonald had objected and stated that the State failed to establish a foundation that J.M. understood the difference between the truth and a lie or that J.M. understood the possible consequences of lying, that the evidence contradicted a number of J.M.'s responses, and that J.M. would agree with anything to make conflicts go away. The State maintains that the court acted within its discretion when it found J.M. to be a competent witness and that, even if the foundation was insufficient, such a deficiency does not warrant reversal of McDonald's convictions because J.M.'s testimony was merely cumulative of A.M.'s more detailed testimony. In his reply brief, McDonald contends that J.M.'s testimony was crucial to the State's case, that it was J.M.'s bearing and demeanor that strengthened the State's case, that there is little doubt that J.M. was a sympathetic witness, and that "[h]is testimony was that much more compelling when the court declared him to be competent, despite his obvious disabilities." Appellant's Reply Brief at 4.

Ind. Evidence Rule 601 provides: "Every person is competent to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly."

"A child's competency to testify at trial is established by demonstrating that he or she (1) understands the difference between telling a lie and telling the truth, (2) knows he or she is under a compulsion to tell the truth, and (3) knows what a true statement actually is." Richard v. State, 820 N.E.2d 749, 755 (Ind. Ct. App. 2005), trans. denied, cert. denied, 546 U.S. 1091, 126 S. Ct. 1034 (2006). "It is within the sound discretion of the trial court to determine whether a child is competent to testify based upon the judge's observation of the child's demeanor and responses to questions posed to her by counsel and the court, and a trial court's determination that a child is competent will only be reversed for an abuse of discretion." Harrington v. State, 755 N.E.2d 1176, 1181 (Ind. Ct. App. 2001). "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted). An error in the admission of evidence does not justify reversal if the evidence is cumulative of other evidence presented at trial. Cole v. State, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012).

In this case, even if the trial court abused its discretion in admitting J.M.'s testimony, the admission was harmless and does not require reversal of McDonald's convictions. The record reveals that, when asked one of the things McDonald did to him, J.M., who was nine years old at the time of trial, testified "[h]im done sex with me," and when asked the body part he was talking about, J.M. stated "[d]ick on your butt." Transcript at 550-551. When asked "whose dick went in whose butt," J.M. stated "[l]ike mine." Id. at 551. When asked "[y]ours went in whose butt," J.M. stated "[i]n [McDonald]." Id. at 551-552. J.M. responded affirmatively when asked if he did

6

anything with A.M. and if McDonald was present. When asked what he and A.M. did, J.M. testified "[w]e just put my body part in her butt." Id. at 552.

Prior to J.M.'s testimony, the jury heard the testimony of A.M., who was eleven years old at the time of trial. When asked what she remembered happening between McDonald and J.M., A.M. testified that they "had sex together and play with each other and putting their mouth on each other's parts." Id. at 414. A.M. testified that McDonald "put his part up [J.M.'s] butt . . . ." Id. at 414-415. When asked what body part McDonald "put" in J.M.'s butt, A.M. stated "[a] dick," and when asked "[y]ou saw [McDonald] put his dick in [J.M.'s] butt," A.M. stated "Yes." Id. at 415-416. A.M. further testified that she observed McDonald and J.M. "put each other's mouth on their parts," and when asked "[s]o as far as you saw them each put their mouth on each other's dick," A.M. stated "Yes." Id. at 416. A.M. also indicated that she observed McDonald insert his penis into J.M.'s butt more than once. When asked if she "ever [saw] anything come out of [McDonald's] dick," A.M. testified "[j]ust white stuff," and when asked "what would [McDonald] do with this white stuff," A.M. testified "[h]e just make put it in his mouth or, and drink it." Id. at 419.

In addition, A.M. testified that McDonald "made [her] and [J.M.] have sex together," and when asked what she meant, A.M. testified "[l]ike [J.M.] putting his part up my butt or front of me." Id. at 420. When asked "when you're talking about the front part here, are you talking about the outside of the part[] or did he actually put it . . . inside your body," A.M. testified "[i]nside," and when asked the same question "about the back part of your body" where "the poop comes out," A.M. also testified "[i]nside." Id. A.M. testified that McDonald would be "standing by" her and J.M. "showing [them] how to do

7

it" and that he "moved [J.M.] and put it right, in the right, his right spot." Id. at 421. A.M. indicated that McDonald "would help put [J.M.'s] dick in [her]." Id. at 422. When asked how many times she thought this happened, A.M. testified "[a]lmost every day and all, all the time." Id.

J.M.'s testimony was substantially similar to the testimony of A.M., and A.M. testified as to each of the acts to which J.M. testified and alleged by the State, and defense counsel was able to cross-examine J.M. and A.M. about their observations and memories. We conclude that any possible error in the admission of J.M.'s testimony was, at most, harmless because the testimony was cumulative of A.M.'s testimony. See Cole, 970 N.E.2d at 784 (holding the admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted); Purvis v. State, 829 N.E.2d 572, 581-585 (Ind. Ct. App. 2005) (holding that the admission of statements of a child molesting victim to an officer was erroneous because the child was unable to understand the nature and obligation of an oath and thus was incompetent to testify, but that the erroneous admission was harmless because the testimony was cumulative and that the properly admitted testimony was a lengthier recounting of events), trans. denied, cert. denied, 457 U.S. 1026 (2006). Accordingly, we conclude that reversal of McDonald's convictions on this basis is unwarranted.

II.

The next issue is whether the court abused its discretion in denying McDonald's motions for mistrial. "The granting of a mistrial lies within the sound discretion of the trial court, and we reverse only when an abuse of discretion is clearly shown." Davis v. State, 770 N.E.2d 319, 325 (Ind. 2002), reh'g denied. "The remedy of mistrial is

8

'extreme,' Warren v. State, 757 N.E.2d 995, 998-999 (Ind. 2001), strong medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level, Gambill v. State, 436 N.E.2d 301, 304 (Ind. 1982)." Lucio v. State, 907 N.E.2d 1008, 1010-1011 (Ind. 2009). We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. Alvies v. State, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), trans. denied. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Id. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. Id. A mistrial is an extreme sanction warranted only when no other cure can be expected to rectify the situation. Id.

McDonald asserts that the court abused its discretion in denying his motions for mistrial because the jury was improperly exposed to prior bad acts through a statement made by A.M. and vouching testimony when Detective Ritter gave certain testimony regarding the victims' statements. The State maintains that the court properly denied the motions for mistrial, that A.M.'s statement, which the State did not anticipate, did not place McDonald in a position of grave peril, and that Detective Ritter's testimony did not constitute improper vouching testimony and did not place McDonald in a position of grave peril.

With respect to McDonald's motion for mistrial based upon A.M.'s statement, during the direct examination of A.M., the following exchange occurred:

9

Q    Did [McDonald] ever tell you or say anything to you about talking about what was going on?

A    Yes.

Q    What did he tell you?

A    He told me you better not tell anyone or you'll be killed.

Q    Who would kill you?

A    Huh?

Q    Who would kill you?

A    [McDonald].

Q    Did you believe him?

A    Yes, and no.

Q    But yet you told?

A    Yes.

Q    Uh, if you didn't do these things, have sex with [J.M.], uh, or [J.M.] wouldn't have sex with [McDonald], what would [McDonald] do to you?

A    He had sex with me.

Transcript at 424-425. McDonald moved for a mistrial and stated that "the witness was advised not to speak [of] any sexual acts between herself or anybody else and [McDonald],"[2] that A.M.'s statement was highly prejudicial, that "[n]ow [] the jury's

---

[2] Ind. Evidence Rule 404(b) provides:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on

been told that these things happened which we can rebut that her dad was going to kill he[r] and that if she didn't have sex with [J.M.] dad was going to have sex with her then," and that "I don't think I can cure that, especially now through what this witness has said." Id. at 425. The trial court stated that A.M.'s response was not a violation of the motion *in limine*,[3] that McDonald could ask for a curative response from the court, and that the motion for mistrial was denied. The court instructed the jury to disregard A.M.'s last answer, in no way during deliberations to discuss or refer to her answer, and that the answer could not be used as evidence. The court asked the jury whether they could all do those things and noted that all of the jury members responded affirmatively.

Based upon the record, including A.M.'s extended and detailed testimony regarding the actions of McDonald with J.M. and in causing J.M. and A.M. to have sex with each other, and in light of the court's admonition to the jury to disregard the statement and the jury's indication that they could do so, we conclude that McDonald has not established that A.M.'s statement "[h]e had sex with me" was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected, or that the jury's decision was affected by the statement. The trial court did not abuse its discretion in denying McDonald's motion for mistrial on this basis.

---

good cause shown, of the general nature of any such evidence it intends to introduce at trial.

[3] In his motion *in limine*, McDonald requested that the State make no comment or argument on his apparent criminal adult or juvenile record of any reference to any prior misconduct. In its amended notice of intent to offer evidence pursuant to Ind. Evidence Rule 404(b), the State said in part that it still intended to present evidence related to sexual acts and touches that A.M. was forced to participate in with McDonald and that, pursuant to Marshall v. State, 893 N.E.2d 1170 (Ind. Ct. App. 2008), those acts are considered intrinsic to the acts charged and therefore admissible, as Evidence Rule 404(b) does not apply.

With respect to McDonald's motion for mistrial based upon Detective Ritter's testimony, Detective Ritter testified as to her role in the investigation of the allegations against McDonald involving the children. During cross-examination, McDonald's defense counsel questioned Detective Ritter in part regarding her investigation and several individuals she did not interview during the investigation. On redirect examination, the prosecutor asked Detective Ritter why she had not talked during her investigation "to the volumes of people that [defense counsel] listed off," and Detective Ritter responded by explaining her role on a multidisciplinary team and that other team members perform other parts of the investigation. Id. at 473. The following exchange then occurred:

> Q      All right. In other words, in making the determination to file charges, uh, what is that, that you, made you decide to actually file charges?
>
> A      Uh, the main point is the reliability of the victim's statements. Uh, once you are able to get the victim's statements, the allegations, uh, determining believability and corroboration of their statements.

Id. at 474. McDonald moved for a mistrial on the basis that Detective Ritter's testimony constituted improper vouching for a witness under Ind. Evidence Rule 704(b).[4] The trial court informed the jury there had been an objection and to disregard the question and Detective Ritter's response above. The prosecutor then asked Detective Ritter if she felt that she did a complete and thorough examination prior to bringing charges to the prosecutor's office, and Detective Ritter responded affirmatively.

---

[4] Ind. Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

If a witness's testimony does not opine about the specific child in the case, it leaves the ultimate credibility determination for the jury and, therefore, is not vouching testimony prohibited by Rule 704(b). See Kindred v. State, 973 N.E.2d 1245, 1257 (Ind. Ct. App. 2012) (contrasting general testimony about the signs of coaching from specific testimony about the child victim in a given case, and noting that general testimony preserves the ultimate credibility determination for the jury and therefore does not constitute vouching, whereas a witness who opines as to whether the child victim was coached vouches for the child and invades the province of the jury), trans. denied; see also Otte v. State, 967 N.E.2d 540, 544 (Ind. Ct. App. 2012) (holding that a domestic violence expert's non-specific statements regarding victims of domestic violence was not impermissible vouching testimony under Indiana Evidence Rule 704(b)), trans. denied.

Detective Ritter gave only brief testimony regarding the reliability of victims' statements and did not testify as to any opinion concerning the veracity of the allegations or testimony of J.M. or A.M. Based upon the record, including the fact that Detective Ritter did not specifically vouch for any witness or testify that any witness testified truthfully, the trial court's admonition, and McDonald's cross-examination of Detective Ritter concerning the investigation, we conclude that McDonald has not established that Detective Ritter's response was so prejudicial and inflammatory that he was placed in a position of grave peril. Accordingly, the trial court did not abuse its discretion in denying McDonald's motion for mistrial on this basis.

III.

The next issue is whether an accumulation of certain alleged errors constitute fundamental error. McDonald contends that the admission of hearsay, testimony by an

incompetent complainant, testimony of prior bad acts, and vouching evidence combined to deny him a fair trial and constitute fundamental error. In support of his position, McDonald points to certain comments made during the prosecutor's opening statement, and certain alleged hearsay testimony including that of the foster mother of J.M. and A.M., their bus driver, a volunteer for J.M.'s church group, and a forensic interviewer. The State maintains that McDonald fails to show fundamental error, that the challenged opening statements were not improper, that some of the challenged testimony did not constitute inadmissible hearsay, and that, to the extent that some of the testimony involved hearsay, the testimony was harmless.

To the extent that McDonald failed to object or otherwise challenge the argument or admission of evidence he claims was improper, McDonald's claims are waived. See Johnson v. State, 734 N.E.2d 530, 532 (Ind. 2000) (holding that the failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes). Also, errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996). In determining whether error in the introduction of evidence affected the defendant's substantial rights, this court must assess the probable impact of the evidence upon the jury. Id. In addition, a claim waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that fundamental error occurred. Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for

14

harm is substantial, and the resulting error denies the defendant fundamental due process. Id. This exception is available only in egregious circumstances. Id.

In this case, some of the testimony challenged by McDonald does not constitute inadmissible hearsay. The testimony of the children's foster mother regarding her observations of the children simulating sexual acts with each other, and A.M.'s statement that "daddy taught me" after being asked where she learned "to do this," explained why the foster mother contacted DCS and why the children were interviewed. Transcript at 490. See Goldsworthy v. State, 582 N.E.2d 921, 922 (Ind. Ct. App. 1991) (noting that trial courts may admit into evidence statements that would otherwise be hearsay where those statements are introduced to explain a witness's actions rather than for their probative value). Also, the testimony of the church volunteer regarding J.M.'s statements that he was scared to pray, he felt like he was a bad person because he had done bad things, and that these things were "sexy things," explained why the volunteer reported the conversation to church staff and DCS. Transcript at 631. Further, the prosecutor withdrew the question and asked the volunteer to describe his response without referring to what J.M. may have stated, and the volunteer explained that he "felt that there was something unusual about [J.M.'s] comments" and discussed the matter with the staff at the church and then reported the incident to child services. Id. at 632. And to the extent that other testimony McDonald challenges constitute inadmissible hearsay, the evidence is cumulative of properly admitted testimony. The testimony of the forensic interviewer regarding certain statements made by A.M. and J.M. during their interviews and by the children's bus driver was cumulative of the testimony of A.M. Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence

15

admitted. McClain, 675 N.E.2d at 331-332. Any such admission was harmless and does not require reversal. See id. (holding that any error in the admission of the therapist's testimony was harmless and reversal was not required where hearsay evidence was merely cumulative of other evidence admitted).

We further note that the prosecutor's statements informing the jury of the evidence and witnesses which the State expected to present was not improper. See Splunge v. State, 526 N.E.2d 977, 981 (Ind. 1988) (noting that the scope and content of the opening statement is within the discretion of the trial court and that the purpose of an opening statement is to inform the jury of the charges as well as the contemplated evidence), reh'g denied, cert. denied, 490 U.S. 1110, 109 S. Ct. 3165 (1989). Further, the trial court instructed the jury that the opening statements of the attorneys are not evidence and should be considered by the jury only as a preview of what the attorneys expect the evidence will be. In light of the testimony against McDonald, we cannot say that the prosecutor's comments prejudiced him, denied him a fair trial, or affected his substantial rights. See id. (holding that "[i]n view of the testimony of all the other witnesses establishing Splunge's participation with Fox in these crimes, it does not appear the statements made by the prosecuting attorney in opening statement prejudiced Splunge . . . ."). We also note that we addressed the testimony of J.M. and alleged prior bad acts and vouching evidence above. Additionally we observe that McDonald does not contend that each of his alleged errors, standing alone, constitutes fundamental error, but rather that the cumulative effect constitutes fundamental error.

Based upon the record and the evidence, we conclude that the cumulative effect of the admission of any inadmissible hearsay evidence does not establish a substantial

16

likelihood that any improper testimony contributed to McDonald's conviction, that McDonald was deprived of fundamental due process, that his substantial rights were affected, or that any such error constitutes fundamental error. See Bryant v. State, 984 N.E.2d 240, 247 (Ind. Ct. App. 2013) (finding that the challenged testimony was for the most part cumulative, that there was not a substantial likelihood that the hearsay testimony contributed to the conviction, and consequently that admission of the challenged testimony was harmless error), trans. denied. McDonald has not demonstrated fundamental error requiring reversal of his convictions.

CONCLUSION

For the foregoing reasons, we affirm McDonald's convictions.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

17